SHAW, Justice.
Natures Way Marine, LLC (“Natures Way”), an Alabama limited-liability company and the plaintiff below, appeals from a *616 partial summary judgment entered in favor of Dunhill Entities, LP (“Dunhill”), a Texas limited partnership and a defendant below, as to Natures Way’s claim seeking to enforce a mechanic’s and materialman’s lien pursuant to § 35-11-210, Ala.Code 1975.[1] For the reasons discussed below, we dismiss the appeal.

Facts and Procedural History

Dunhill owns property abutting the Mobile River in Mobile. In order to accept barge deliveries, Dunhill, on or around March 11, 2008, contracted with Natures Way, which “is in the business of bareboat charters and related services for barges it owns,” to perform dredging work necessary to deepen the approaches to the barge berth located on the Dunhill property. Work began on or around May 12, 2008. Following completion of the dredging project, Natures Way alleged, Dunhill paid a portion of the outstanding invoices but still owes Natures Way $332,746.33.
On May 19, 2009, Natures Way sued numerous corporate entities apparently operated by Dunhill (hereinafter referred to collectively as “the Dunhill entities”) and three fictitiously named defendants,[2] seeking to recover the purported outstanding amount on the following claims: breach of contract, work and labor done, action on account, account stated, and unjust enrichment. The Dunhill entities answered, generally denying the allegations of Natures Way’s complaint. In their answer, the Dunhill entities also asserted a counterclaim alleging breach of contract, failure to perform the dredging work in a good and workmanlike manner, fraud, and unjust enrichment. The Dunhill entities further asserted that the invoices submitted by Natures Way were duplicative and that they included charges for work Natures Way allegedly did not perform.
Following the filing of a verified statement of lien in the Mobile Probate Court on July 8, 2009,[3] Natures Way amended its *617 original complaint to add an enforcement-of-lien count seeking to enforce a lien against Dunhill’s Mobile property pursuant to § 35-11-210.[4] Dunhill moved for a partial summary judgment as to the lien-enforcement claim. In its motion seeking a partial summary judgment, Dunhill argued that any dredging work performed by Natures Way occurred on or in public waters and thus that there was no dredging on its land and that all dredging work performed by Natures Way ceased as of December 10, 2008, which, pursuant to § 35-11-215, Ala. Code 1975, would have rendered Natures Way’s statement of lien, filed on July 8, 2009, untimely.[5]
Natures Way opposed Dunhill’s motion for a partial summary judgment, relying on invoices that, it said, demonstrated the use of its barge by Dunhill from January 19, 2009, until January 25, 2009, and, thus, its timely filing of its verified statement of lien. In addition, Natures Way argued that Dunhill possessed riparian rights that extended over the submerged land on which Natures Way had performed dredging work; therefore, Natures Way contended, the work benefited Dunhill’s property.
On September 14, 2009, the trial court granted Dunhill’s motion for a partial summary judgment. Although the trial court’s order failed to include the factual findings on which it based that decision, it specifically “ordered” that “Nature’s [sic] Way Marine, LLC does not have a valid lien on the property of Dunhill Entities, L.P. ...”
Natures Way timely filed a motion asking the trial court to “reconsider” its ruling, which the trial court denied. In its order denying the motion filed by Natures Way, the trial court reaffirmed its previous partial summary judgment, stating:
“The Court finds that from the period of time from March 2008 to late January early February 2009 [Natures Way] provided certain barges and labor for use in dredging the underwater land abutting the Dunhill terminal. Though the exhibits before the Court reflect that some of the dredging performed by [Natures Way] was on submerged lands described in [Dunhill’s] deed, it is undisputed that those submerged lands lay beneath a navigable waterway ... i.e., the Mobile River. It has long been settled law in this state that the State of Alabama has title to submerged lands in navigable waters. See Reid v. the Alabama State Docks Department, 373 So.2d 1071 (Ala.1979); thus, any improvements performed by [Natures Way] were not on the land ornied by [Dunhill], but rather land adjacent to or abutting [Dunhill’s] property.
“[Natures Way] also points to Ala. Code [1975,] § 33-7-50, which authorizes the owner of riparian lands upon navigable waters to dredge out and deepen the approaches thereto. While such statute may give the legal authority for such work, it does not extend the mechanic’s lien statute to cover such *618 work. In this respect, the Court finds that this case is not unlike that of Shelby Contracting Co. v. Pizitz, 231 So.2d 743 (Ala.1970). There, a contracting company who constructed a street sought to establish and enforce a mechanic’s lien on lots abutting the street. The Supreme Court refused to declare that an improvement on the street was an improvement on the abutting lot, noting that it was the province of the legislature to so extend the statute if it saw fit to do so. Here, an improvement on the submerged lands owned by the State of Alabama does not, for the purposes of the mechanic’s lien statute, constitute an improvement on the abutting lands. While there may be good policy reasons to extend the statute to meet the facts and circumstances covered in this case, it is not this Court’s province to do so.”
(Emphasis original.) On November 6, 2009, pursuant to a request by Natures Way,[6] the trial court purported to certify the partial summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Natures Way timely appealed.

Discussion

As noted, Natures Way purports to appeal the trial court’s partial summary judgment resolving its lien-enforcement claim against Dunhill. Although neither party to this appeal has raised the issue of the appropriateness of the trial court’s Rule 54(b) certification, it is well settled that this Court may consider, ex mero motu, whether a judgment or order is sufficiently final to support an appeal.
‘““As this court has said many times previously, a final judgment is necessary to give jurisdiction to this court on an appeal, and it cannot be waived by the parties.... ”
“‘When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu.’
“Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974) (quoting McGowin Investment Co. v. Johnstone, 291 Ala. 714, 715, 287 So.2d 835, 836 (1973)).
“ ‘Ordinarily, an appeal can be brought only from a final judgment. AIa.Code 1975, § 12-22-2. If a case involves multiple claims or multiple parties, an order is generally not final unless it disposes of all claims as to all parties. Rule 54(b), Ala. R. Civ. P. However, when an action contains more than one claim for relief, Rule 54(b) allows the court to direct the entry of a final judgment as to one or more of the claims, if it makes the express determination that there is no just reason for delay.’
“Grantham v. Vanderzyl, 802 So.2d 1077, 1079-80 (Ala.2001).”
North Alabama Elec. Coop. v. New Hope Tel. Coop., 7 So.3d 342, 344 (Ala.2008).
Here, as noted above, the trial court certified as final pursuant to Rule 54(b) its partial summary judgment as to the lien-enforcement claim. However, “‘[n]ot every order has the requisite element of finality that can trigger the operation of Rule 54(b).’ ” Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 361 (Ala.2004) (quoting Goldome Credit Corp. *619 v. Player, 869 So.2d 1146, 1147 (Ala.Civ.App.2003) (emphasis omitted)).
“ ‘Rule 54(b) certifications “should be made only in exceptional cases.” ’ [Wallace v. Tee Jays Mfg. Co., 689 So.2d 210] at 212 [(Ala.Civ.App.1997)]. ‘[I]n an action involving claims and counterclaims, Rule 54(b) certification has been determined to be improvident where the issues in the claims were deemed to be “so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ Fullilove v. Home Fin. Co., 678 So.2d 151, 154 (Ala.Civ.App.1996) (quoting Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987)). In Branch v. SouthTrust Bank of Dothan, N.A., [this] court stated:
“ ‘The facts of this case, however, do not present the type of situation that Rule 54(b) was intended to cover. The counterclaim asserted by [the borrower] is based upon an alleged fraudulent representation by an agent of [the lender] upon which [the borrower] claims he relied in executing the promissory note. It therefore appears that the issues in the two claims in this ease are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results. We must conclude, therefore, that in the interest of justice, the claims should not be adjudicated separately.’
“514 So.2d at 1374. See also Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala.2006); Hurst v. Cook,. 981 So.2d 1143 (Ala.Civ.App.2007); and BB & S General Contractors, Inc. v. Thornton & Assocs., Inc., 979 So.2d 121 (Ala.Civ.App.2007).
“In BB & S General Contractors, a contractor that had been hired to harvest timber sued the holder of the timber rights, asserting, among other claims, that the defendant had breached the contract by failing to pay it for performance under the contract. The defendant counterclaimed, alleging, among other things, that the contractor had breached the contract by failing to perform the timber-cutting contract properly. The trial court entered a summary judgment on all the counterclaims and certified that judgment as final under Rule 54(b). [The Court of Civil Appeals] held that the trial court had erred in certifying the judgment as final because
“ ‘the interpretation of the contract and a determination as to which party breached the contract is central to the parties’ contract claims; accordingly, the parties’ contract claims are dependent on each other and a resolution of one claim would impact the determination of the other.’
“979 So.2d at 125.”
Posey v. Mollohan, 991 So.2d 253, 258-59 (Ala.Civ.App.2008).
In the present case, each party has asserted a competing breach-of-contract claim arising from the dredging contract. The lien-enforcement claim asserted by Natures Way specifically seeks to recoup moneys that, Natures Way claims, it is owed for work performed pursuant to that contract. In their counterclaim, however, the Dunhill entities, which include Dunhill, contend that Natures Way has submitted — and that the Dunhill entities have paid — fraudulent and/or duplicative invoices; that Natures Way has billed the Dunhill entities — and has been paid — for work that Natures Way did not perform; and that at least a portion of the work that Natures Way did perform was substandard. Upon resolution of the Dunhill entities’ counterclaim, the trial court may find that there is, in fact, no outstanding unpaid balance owed to Natures Way for *620 materials or labor supplied in furtherance of the dredging work performed by Natures Way on Dunhill’s property that would support the lien claimed by Natures Way. See § 35-11-210 (providing, in pertinent part, that the claimed “lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor” (emphasis added)).
If the Dunhill entities' counterclaim was, in fact, to be resolved unfavorably to Natures Way, then Natures Way would not be entitled to the claimed lien against Dun-hill, and both the validity and the amount of the claimed lien, at least one of which is squarely before us in the present appeal, would merely be hypothetical issues. Thus, there is a factual overlap between the lien-enforcement claim and the Dunhill entities’ counterclaim. Specifically, as set out above, both arose out of a purported breach of the same contract. Additionally, the Dunhill entities’ counterclaim is in essence a defense to Natures Way's lien-enforcement claim, the subsequent adjudication of which, also as noted above, may affect the validity of the lien claimed by Natures Way against Dunhill. Aptly, the Court of Civil Appeals, in H.P.H. Properties, Inc. v. Cahaba Lumber & Millwork, Inc., 811 So.2d 554, 555 (Ala.Civ.App.2001), stated:
“H.P.H.⅛ counterclaim alleges slander of title, referencing several pre-lawsuit liens Cahaba Lumber recorded against lots owned by H.P.H. Each of the liens contains a specific statement that the ‘lien is claimed to secure an indebtedness ... for materials furnished for the improvements of said real property’. The moneys owed on these same materials are the subject of the original complaint by Cahaba Lumber. There is a legitimate question as to whether success by H.P.H. on its counterclaim would offset the amount already awarded Cahaba Lumber on its initial complaint. The trial court’s later resolution of H.P.H.’s counterclaim could materially [ajffect the total amount of damages awarded in this action. Therefore, we conclude that the attempted Rule 54(b) certification is ineffective — Rule 54(b) certification was not appropriate. There was a ‘just reason for delay’ in the entry of a final order. Thus, this case should not be before an appellate court yet. See Bacadam Outdoor Adver., Inc. v. Kennard, 721 So.2d 226 (Ala.Civ.App.1998).”
811 So.2d at 555.
Here, both Natures Way’s lien-enforcement claim and the Dunhill entities’ counterclaim arise out of the alleged breach of the same contract for dredging work and revolve around resolution of the same issues, i.e., whether the Dunhill entities owe Natures Way additional moneys for that work. Therefore, the parties’ respective “contract claims are dependent on each other and a resolution of one claim would impact the determination of the other.” BB & S Gen. Contractors, Inc. v. Thornton & Assocs., Inc., 979 So.2d 121, 125 (Ala.Civ.App.2007). Just as in H.P.H. Properties, the Dunhill entities’ success on their counterclaim could “materially [ajffect” the validity of Natures Way’s lien — the sole basis of Natures Way’s request seeking Rule 54(b) certification. 811 So.2d at 555. Therefore, we conclude that the lien-enforcement claim of Natures Way and the Dunhill entities’ counterclaim were not discrete claims, but were, instead, closely intertwined, and that their separate adjudication is fraught with an inherent risk of inconsistent results, making them inappropriate for Rule 54(b) certification. See Winecoff v. Compass Bank, 854 So.2d 611, 614 (Ala.Civ.App.2003) (determining a Rule 54(b) certification to be inappropriate when a counterclaim related to the claim the trial court had ruled upon remained *621 pending in the trial court). See also First Southern Bank v. O’Brien, 931 So.2d 50, 53 (Ala.Civ.App.2005) (noting that “ ‘ “[a]p-pellate review in a piecemeal fashion is not favored, and trial courts should certify a judgment as final, pursuant to Rule 54(b), only in a case where the failure to do so might have a harsh effect” ’ ” (quoting other cases) (emphasis omitted)); and Ann Corp. v. Aerostar World, Inc., 781 So.2d 231, 234 (Ala.Civ.App.2000) (holding that Rule 54(b) certification was inappropriate where appeal and remaining counterclaim both arose from a contract dispute regarding moneys due from alleged unauthorized repairs). Because the trial court’s Rule 54(b) certification was invalid, this appeal, which is from a nonfinal judgment, must be dismissed.
APPEAL DISMISSED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.

.Section 35-11-210 provides, in pertinent part:
"Every mechanic, person, firm, or corporation who shall do or perform any work, or labor upon, or furnish any material, fixture, engine, boiler, waste disposal services and equipment, or machinery for any building or improvement on land, or for repairing, altering, or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, architect, trustee, contractor, or subcontractor, upon complying with the provisions of this division, shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title, and interest therein of the owner or proprietor, and to the extent in area of the entire lot or parcel of land in a city or town; or, if not in a city or town, of one acre in addition to the land upon which the building or improvement is situated; or, if employees of the contractor or persons furnishing material to him or her, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and the employees and materialmen shall also have a lien on the unpaid balance.”

. The additional defendants named by Natures Way included Dunhill Products (Alabama) GP, LLC; Dunhill Terminals GP, LLC; Dunhill Entities GP, LLC; Dunhill Products (ALABAMA), LP; Dunhill Products, LP; Dun-hill Terminals, LP, all of which appear to be various Dunhill entities doing business in Mobile, and three fictitiously named defendants. As to the outstanding amount due, Natures Way supported its complaint with numerous exhibits, including itemized invoices generated by Natures Way relating to the dredging project and the affidavit of Bill Haney, Natures Way’s operations manager, in which Haney verified the invoices and confirmed both that they related to the Dunhill dredging project and that they accurately reflected the purported outstanding amount.

. There appears to be a dispute as to the last day on which Natures Way performed work on Dunhill's property. Dunhill maintains that Natures Way completed the dredging *617 work on December 10, 2008. Natures Way, however, contends that it last performed work for or provided material to Dunhill on January 25, 2009. On July 8, 2009, Natures Way filed a verified statement of lien against the Dunhill property pursuant to § 35-11-210.

. The lien-enforcement count of the amended complaint filed by Natures Way was asserted solely against and sought to recoup the alleged outstanding amount solely from Dun-hill, which, according to Natures Way, holds “[f]ee simple title to [the Mobile] property."

. Section 35-11-215 provides that a mechanic’s or materialman's lien "shall be deemed lost unless the statement referred to in section 35-11-213 shall be filed by every original contractor within six months ... after the last item of work or labor has been performed or the last item of any material ... has been furnished....”

. In its motion seeking Rule 54(b), Ala. R. Civ. P., certification, Natures Way asserted that its lien-enforcement claim was separate from and unique to all other claims it asserted because the lien-enforcement claim pertained to only a single defendant holding title to the subject property and to the propriety of the lien itself, not to the propriety of the amount of the lien, which Natures Way sought to recover from the Dunhill entities.