ROSEMARY LEDET, Judge.
Un this criminal appeal, the defendant, Jennifer Gaubert, seeks review of the district court's judgment finding her guilty of criminal mischief, a violation of La. R.S. 14:59. For the reasons that follow, we affirm.[1]

STATEMENT OF THE FACTS AND THE CASE

On April 5, 2018, Ms. Gaubert went to the Third District Station (the “Station”) of the New Orleans Police Department (the “NOPD”) to report the crimes of extortion and video voyeurism, violations of La. R.S. 14:66 and 14:288," respectively. Ms. Gaubert, a practicing attorney, was the alleged victim of these crimes; Hervey Farrell, a taxi cab driver, was the alleged perpetrator.
I .¿When Ms. Gaubert made the extortion report,[2] there were pending criminal and civil claims against her arising out of an April 6, 2012 taxi cab incident. During that taxi cab. incident, Ms. Gaubert and Mr. Farrell had a sexual encounter. Whether that encounter was consensual-in whole or in part — is disputed. During the encounter, Mr. Farrell used his cellphone to take a bawdy video of Ms. Gau-bert. On the day of the taxi cab incident, Mr. Farrell reported, in a 911 call, that he was sexually assaulted in his taxi cab by his passenger, Ms. Gaubert. As a result, *985 Ms, Gaubert was charged in municipal court with simple batey of Mr. Farrell. On April 5, 2018, the municipal charge was still pending.
Likewise, when she made the extortion report, Ms. Gaubert was a defendant in the civil lawsuit Mr. Farrell filed. He filed that suit on March 1, 2013 in Orleans Parish Civil District Court. .In his civil suit, Mr. Farrell alleged that he suffered tort damages, including emotional distress, as a result of Ms. Qaubert’s improper “sexual advances” in the taxi cab incident.
Exactly one year after the taxi cab incident, on April 5, 2018, Ms. Gaubert made the extortion report. Officer Alfred Moran, of the NOPD Traffic Division, was assigned the case. On that date, Ms. Gaubert spoke with Officer Moran at the Station for about an hour. According to the police report Officer Moran prepared, Ms. Gaubert related to him the following facts:
It* [On] April 6, 2012, the victim’s friend who was not identified by name[3] flagged down a White Fleet Cab at the corner of Bourbon and Bienville St.
• The driver [Mr. Farrell] .was told to bring Ms. Gaubert to 6440 Vicksburg St. [her home address in the Lake-view area of New Orleans].
• The victim [Ms. Gaubert] admitted she was intoxicated and during the ride home, she was allowed to get in the [front] passenger seat of the taxi and engaged in consensual kissing • with [Mr. Farrell],
• The drivei’ later stopped the vehicle near Louis XIV and Robert E. Lee Blvd. [in the Lakeview area] and used his cellphone to record video of the victim with her skirt lifted and . video of her underwear and exposed genitalia. Ms. Gaubert never gave [Mr. Farrell] permission to record her.
• Ms. Gaubert stated that her Attorney, [Brigid Collins], received a copy of the video via email at which time [Mr. Farrell] indicated that if he received $1000,' the video and the charges he filed against the victim would go away.
The police report neither defined what the criminal charges were that Mr. Farrell filed against Ms. Gaubert, nor mentioned Mr. Farrell’s pending civil lawsuit.
A few days after making the extortion report, Ms. Gaubert returned to the Station and left a handwritten note for Officer Moran. In the note, Ms. Gaubert provided the following additional information about Mr. Farrell: his address, date of birth, physical description, and social security number. She also stated in the note the following: “[p]lease call me for' additional information/follow up regarding video voyeurism/extortion.” Based on the information Ms. Gaubert provided to him, Officer Moran obtained an arrest warrant for Mr. Farrell for video voyeurism and extortion.[4] The arrest warrant was signed on April 21, *986 2013. On August 19, 2013, Mr. Farrell was arrested. The arrest occurred when Mr. Farrell was stopped for -a traffic violation. As a result of the arrest, Mr. Farrell spent about thirty hours in jail.
Following an investigation of Ms. Gau-bert’s complaint against Mr. Farrell, the State charged Ms. Gaubert, on October 1, 2013, with one count of false swearing for the purposes of denying a constitutional right, a violation of La. R.S. 14:126.2. On October 7, 2013, Ms. Gaubert was arraigned and pled not guilty. On November 15, 2013, she elected a bench trial.
On April 2, 2014, Ms. Gaubert was tried in municipal court on the. simple battery charge and found guilty of that offense. On June 13, 2014, the State amended the bill of information to charge Ms. Gaubert with one count of false swearing for'the purposes of violating public health or safety, a violation of La. R.S. 14:126.1. On that same day,., she pled not guilty to that charge.
On January 16, 2015, a one-day bench trial was held. The State called the following two witnesses: Officer Moran and Ms. Collins. Officer Moran’s testimony focused on Ms. Gaubert’s April 5, 2013 visit to the Station to make the extortion report. His testimony tracked the police report and arrest warrant that he prepared. Ms. Collins testified that she was Ms. Gaubert’s friend and that she was Ms. Gaubert’s attorney in the municipal case. Ms. Collins denied ever receiving an email or any other form of communication from Mr. Farrell or his attorney |fi(Timothy Richardson) requesting $1,000.00 for the charges and the video to go away. She acknowledged receiving a demand from Mr. Farrell’s attorney for between $50,000.00 and $60,000.00, but she explained the demand was in connection with the settlement of Mr. Farrell’s civil lawsuit. Although she could not recall the order, she testified that “a money demand was made and a video was provided.” She acknowledged receiving a copy of the video.
At the close of the State’s case, Ms. Gaubert moved for a directed verdict of acquittal.[5] The district court deferred its ruling. Ms. Gaubert then called the following five witnesses: Shandrell Ezidore; Hector Velasquez; Gasper Migliore, Jr.; Mr. Farrell; and Ms. Gaubert.[6] Ms. Gau-bert’s case focused on the April 6, 2012 taxi cab incident. Ms. Ezidore, a NOPD 911 operator, verified the 911 call made by Mr. Farrell on April 6, 2012. Mr. Velasquez and Mr, Migliore, both neighbors of Ms. Gaubert on April 6, 2012, testified to what they observed in the service alley behind their Lakeview residences on or about that date. Simply stated, the neighbors testified that they witnessed a couple engaging in sexual relations in a taxi cab that was parked in the service alley. The neighbors both denied having any knowledge of Mr. Farrell’s alleged extortion attempt. Mr. Farrell and Ms. Gaubert gave diametrically opposed versions of the April 6, 2012 taxi cab incident. Mr. | (¡Farrell denied extorting Ms. Gaubert; whereas, Ms. Gaubert testified that she believed he extorted her. -
*987 At the end of the trial, the district court denied Ms. Gaubert’s motion for a directed verdict of acquittal and found her guilty of the lesser, misdemeanor offense of criminal mischief. La. R.S. 14:59. On February 25, 2015, Ms. Gaubert filed motions for new trial and post-verdict judgment of acquittal. The district court denied those motions. The district court sentenced Ms. Gaubert to one day in parish prison, suspended; one day of inactive probation with the conditions that she not purchase or possess a gun during probation; and ordered her to pay $244.00 for misdemeanor court costs, $500.00 for misdemeanor or felony costs, and $250.00 for the Indigent Transcript Fund. This appeal followed.

DISCUSSION

Jurisdiction
As a preliminary matter, we address the issue of this court’s jurisdiction to decide this appeal. Ms. Gaubert seeks to appeal her misdemeanor conviction for criminal mischief, a violation of La. R.S. 14:59; This Court has' recognized that there is no right of appeal from a misdemeanor conviction. State v. Morales, 13-1148, pp. 1-2 (La.App. 4 Cir. 1/22/14), 133 So.3d 144, 145 (citing State v. Walker, 05-0876, p. 1 (La.App. 4 Cir. 3/15/06), 929 So.2d 155, 156); see also La. C.Cr.P. art. 912.1(B). However, in this case, Ms. Gau-bert was charged and tried for a felony— false swearing for the purposes of violating public health or safety, a violation of La. R.S. 14:126.1. The Louisiana Constitution vests appellate courts with jurisdiction over “all criminal cases triable by a jury, except, as provided in Section 5, Paragraph (D)(2) of this Article.” La. Const. Art. V, § 10(A)(3).[7] Because the crime for which Ms. Gaubert was tried was “triable by jury,” this court has jurisdiction over the instant appeal, albeit an appeal from a misdemeanor conviction.
Assignment of Error Number One
Ms. Gaubert’s first assignment of error is that the evidence is insufficient to support the conviction - for criminal mischief. The standard for determining an insufficiency of evidence, claim is well-settled.- As the Louisiana Supreme Court stated in State v. Pigford, 05-0477, pp. 5-6 (La.2/22/06), 922 So.2d 517, 520-21, the standard is as follows:
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La.1984). This standard, now legislatively.embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. State v. Robertson 96-1048, p. 1 (La.10/4/96), 680 So.2d 1165; State v. Lubrano, 563 So.2d 847, 850-(La., 1990): A reviewing court may intervene in the trier of fact’s decision only to the extent necessary to guarantee due process of law. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). Accordingly, in cases relying on circumstantial evidence to prove one or more elements of the crime, when the fact-finder reasonably rejects the hypothesis of innocence ad *988 vanced by the defendant at trial, that hypothesis fails, and the verdict stands unless the evidence suggests an alternative hypothesis sufficiently reasonable that rational jurors could not find proof of the defendant’s guilt beyond a reasonable doubt; State v. Lee, 01-1080, p. 12 (La.11/28/01), 800 So.2d 883, 841; Captville, 448 So.2d at 678.
Id. When “there is conflicting testimony about factual matters, the- resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.” State v. Materre, 09-1666, p. 11 (La.App. 4 Cir. 12/8/10), 63 So.3d 616, 622 (citing State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So,2d 622). An appellate court neither assesses the witnesses’ credibility nor reweighs evidence. State v. Sparkman, 08-0472, p. 6 (La.App. 4 Cir. 1/28/09), 6, So.3d 891, 896 (citing State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442).
In this case, Ms. Gaubert was convicted of criminal mischief. In 'order to convict a defendant of criminal mischief, the State must prove the intentional performance of one of nine enumerated acts in La. R.S. 14:69. In this case, the relevant enumerated act is set forth in subsection five — “[gjiving of any false report or complaint to a sheriff, or his deputies, or to any officer of the law relative to the commission of, or an attempt to commit, a crime.” La. R.S. 14:69(6).
Although Ms. Gaubert characterizes criminal mischief as a specific intent crime, she cites no support for this characterization. The State counters that “[t]he existing jurisprudence on the issue of intent under the criminal mischief statute that concludes that intent must be specific deals exclusively with subsection one (1) [criminal mischief by tampering]. See State v. Frosch, 00-1525 (La.App. 4 Cir. 3/14/01), 787 So.2d 336, reversed on other grounds, 01-1033 (La.3/22/02), 816 So.2d 269; State v. Krueutzer, 583 So.2d 1160 (La.App. 5th Cir.1991).” We agree.
As this court explained in the Frosch case, “[c]riminal mischief by tampering is a specific intent crime.” 00-1525 at p. 6, 787 So.2d at 341 (citing Krueutzer, 583 So.2d at 1163) (citing State v. Elzie, 343 So.2d 712, 713-14 (La.1977) .(“in Louisiana, we require proof of specific intent where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence”)). In contrast, as the First Circuit Court of Appeal held in State ex rel. Johnson v. Maggio, 449 So.2d 547, 550 (La.App. 1st Cir.1984), criminal mischief by giving a false report of a crime to a law enforcement officer under La. R.S. 14:59(5) contains no such language; thus, it is a general intent crime. Explaining its holding, the court in Maggio stated:
The crime of criminal mischief requires the “intentional” performance of certain acts — in this case, giving a false report to an officer of the law relative to the commission of a crime. This “intentional” performance refers to general criminal intent as the required mental element for this crime. See L.S.A.-R.S. 14:11.
Id. Contrary to Ms. Gaubert's contention, the statute under which she was convicted — La. R.S. 14:59(5) — is a general intent crime.
General intent exists “when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from -his act or failure to act.” La. R.S. 14:10(2). “ ‘In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the. acts which have been declared criminal.’ ” State v. Oliphant, 12-1176, p. *989 12 (La.3/19/13), 113 So.3d 165, 172 (quoting State v. Holmes, 388 So.2d 722, 727 (La.1980)); State v. Jones, 544 So.2d 1294, 1296 (La.App. 4th Cir.1989) (citing Holmes, supra), Stated differently, “once the defendant voluntarily commits the proscribed act, general criminal intent may be presumed.” State v. Watson, 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784. “[I]f a statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable | mwith the general criminal intent of committing the act in question.” State v. Cole, 654 So.2d 831, 833 (La.App. 1st Cir.1989).
To convict Ms. Gaubert of criminal mischief, the State was required, to establish that she gave a false report to a law enforcement officer regarding the commission of a crime. Broken downj the State was required to prove the following three elements: (i) a “report” or “complaint” to a law enforcement officer; (ii) the report was of a “crime”; and (iii) the report was “false.” Ms. Gaubert does not dispute the first two elements; she acknowledges that she gave a report of extortion and that extortion is a crime, ie., a violation of a. R.S. 14:66.[8] As the State‘points out, the circumstances in this case thus are distinguishable from the two reported cases in which criminal mischief convictions under subsection five have been' reversed for lack of evidence of one of the first two elements. State v. Robertson, 364 So.2d 915 (La.1978) (criminal mischief conviction reversed for hi lack of evidence of a “report” or “complaint”);[9] State v. Barrilleaux, 555 So.2d 988 (La.App. 5th Cir.1989) (criminal mischief conviction reversed for lack of evidence of a “crime”).[10] In this case, the only element of the offense that is disputed is th§ third one — the false reporting element.
Ms. Gaubert contends that the State failed to prove the false reporting element. She submits that the State’s reliance on her reasonable inference that the video was delivered,by email to satisfy this element is misplaced. She suggests that it *990 was a misunderstanding regarding the mode of delivery of the extortion threat.[11] She further suggests that the mode of delivery was not dispositive. In support, she cites Officer Moran’s testimony that the mode of delivery was not relevant to his-decision to charge Mr. Farrell with extortion; rather, the only relevant fact was that a threat was conveyed.
Ms. Gaubert points out that Mr. Farrell’s attorney (Mr. Richardson) sent a copy of the video to her attorney with a letter stating: “[attached please find a 112video of your client. I would appreciate you contacting me once you have reviewed it.”[12] . She contends that her feeling that she. was being extorted was exacerbated by her attorney (Ms.. Collins) suggesting that she should think about paying the demand. Ms. Gaubert contends that the act' of sending the video to her attorney with a monetary demand of $60,000.00 (latter reduced to $1,000,00) was an “implied threat” to pay the. money or the video would be' released, which would leád to public embarrassment. Given'these circumstances, she contends that she reported what she rightfully believed' to be an extortion threat.
Even assuming Ms. Gaubert’s contention that there was a misunderstanding regarding the mode of delivery of the extortion threat — email versus another mode — is correct, no evidence was introduced at trial — with the exception of Ms. Gaubert’s testimony — to establish that Mr. Farrell or his representative made a monetary extortion threat. Officer Moran testified that Ms. Gaubert reported Mr. Farrell extorted her by sending an email to her attorney (Ms. Collins) demanding $1,000.00 in exchange for the dismissal of the charges he filed against her and the disappearance of the video. Several days later, Ms. Gaubert sent a handwritten nóte in which she again mentioned the crime of extortion. Officer Moran testified that he never saw of copy of either the alleged email or the video. Nor was he ever able to verify Ms. Gaubert’s complaint through Ms. Collins. ' He testified that neither Ms. Collins nor Ms. Gaubert would return his telephone calls.'
.Ms. Collins denied ever receiving a threat in any form from Mr. Farrell or his attorney (Mr. Richardson). Ms. Collins testified that she did not- receive any [ l3demands, monetary or otherwise, from Mr. Farrell with regard to this incident. Further, Ms. Collins explained that the $50,000.00 to $60,000.00 demand by Mr. Farrell’s attorney (Mr. Richardson) on Mr. Farrell’s behalf was for the sole purpose of settling Farrell’s tort claim against Ms. Gaubert.
Ms. Gaubert’s witnesses testimony focused on the April 6, 2012 taxi cab inci *991 dent. Mr. Farrell denied ever making any threats against Ms. Gaubert. He, however, acknowledged filing a civil suit against her. As to the video, Mr. Farrell testified that he turned it over to his attorney. The only witness who testified about an extortion threat was Ms. Gaubert.
Ms. Gaubert’s testimony, on cross-examination by the prosecutor, regarding the alleged monetary extortion threat was as follows:
Q. Where did you get the information about the thousand dollars to make the charges and .the video go away?
A. Well, it wasn’t exactly originally like an exact money demand. It was originally they wanted money from Brigid [Collins]. That he wanted money.
I felt violated because .he wanted, money for something that he consented to and that was the whole basis, you know.
Q. So if it wasn’t an exact monetary demand, it was a number that you made up?
A. No, it wasn’t a number I made up. Originally it was just that he wants money and then that turned into $60,000.00, which then it just dwindled down to $1,000.00.
⅜ ⅜
Q. When is the first time you heard the amount was one thousand dollars?
A. I can’t remember the exact day as to when. I will tell you this.' The original incident was April 6,. 2012. We went into court almost two weeks after that. I think it was like ten — almost two weeks after that, Brigid [Collins] and I went in to [municipal] court."
luSo what I saw from my eyes because you have to step into my shoes to see -how everything happened, originally it was just me and Brigid going into municipal court. I sat outside on the bench. Hervey Farrell would be there. I didn’t know that Hervey [Farrell] had anything else, you know.
It was just we were all in municipal court. There was nothing civil at the time[13] and Brigid told me he has the video and we need to talk about money. I said, “Oh, money for you? Yeah. I mean thanks for helping me,” and she’s like “No, money for him.” I said‘What money for him.”
[[Image here]]
Q. Did Hervey Farrell ever make an e-mail demand of you of a thousand dollars to make the charges go away?
A. I did not have any contact directly with Hervey Farrell and that’s never what I told the police ,
⅜ ⅜ ⅝
Q. Did anyone ever demand a thousand dollars from you to make the charges and the video go away?
* * *
A. Did anyone — I’m sorry.
Q. — ever make a demand of you for a thousand dollars to make the charges and the video go away?
A. A demand for $60,000.00 that I was told that I have a family, that I should consider that, and that if I paid a sum of money — What was it worth to me. That I should think about it because of what this video could do to me. That’s what was relayed to me.
The district court credited the testimony of Mr. Farrell, Ms. Collins, and Officer Moran over the testimony of Ms. Gaubert and concluded that the State proved Ms. *992 Gaubert’s report of extortion - was false. The demand for $60,000.00 was not a threat; it was a settlement demand in the context of a civil lawsuit.[14] The | ^record is devoid of any evidence, save for Ms. Gau-bert’s testimony, that Mr. Farrell or his attorney ever made a demand for $1,000.00. No other monetary demand was identified. Nor was an email or any other mode of communication documenting an extortion threat produced. The record thus supports the district court’s finding that Ms. Gaubert’s report to Officer Moran of an extortion threat was false. Viewing the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt Ms. Gaubert’s guilt of criminal mischief. This assignment of error is without merit.
Assignment of Error Number Two
Ms. Gaubert’s second assignment of error is that the district court received testimony from her attorney, Ms. Collins, regarding information protected by the attorney-client" privilege. The attorney-client privilege is codified in La, C.E. art. 506 B, which provides as follows:
A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether, oral, written, or otherwise, made for the purpose of facilitating the rendition "of professional legal services to the client,' as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
(1)Between the client or a representative of -the client and the client’s lawyer or a.representative of the lawyer
In its brief, the State stipulates that, in the instant litigation,-for the purposes of La. C.E. art. 506 B, Ms. Gaubert falls under the definition of "client” and Ms. Collins falls under the definition of “lawyer.”
IuíMs. Gaübert further contends that the State failed to comply with the requirements of La. C.E. art. 507 A for subpoenaing a party’s attorney to testify at trial. Article 507 A provides:
Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or' testify in any criminal investigation or proceeding where "the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not -protected from disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.
(2) The purpose of seeking the information is not to harass the attorney or 'his client.'
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.
Immediately before Ms. Collins took the stand to testify at "trial, the defense and the State disputed, on the record, whether *993 the State complied with the requirements of La. C.E. art. 507 A. The State informed the judge — -and the defense conceded — that the State filed a motion to subpoena Ms. Collins based on La. C.E. art. 507 A. The defense, however, argued that the State failed to pursue' its request by having the district court set a date for the contradictory hearing. | ^Countering, the State contended that the defense failed to file a motion to quash the subpoena before trial or to lodge any substantive objection until during the trial.[15]
. At this juncture, the State declared that it was prepared to go forward with, a contradictory hearing, albeit during the trial, on whether Ms. Collins should be allowed to testify. The defense objected and declared that it wished to immediately argue a motion to quash the subpoena. Although at one point during the discussion the trial judge found that Ms. Collins could not testify, the trial judge ultimately concluded that Ms. Collins could testify, but with the limitation that' the defense would be allowed to object on a question-by-question basis. The trial judge also admonished the State as'follows:
[Y]ou [the State] will not, be able to ask any questions., about the conversations between Brigid Collins and the defendant nor any actions she took on behalf of the defendant. Anything else, at this point in time is fair game.
Because La. C.E. art, 507 A calls for a contradictory hearing before the issuance of the subpoena, we find that Ms. Gaubert waived the procedural protections of this article by waiting until the middle of trial to raise this procedural objection. Construing . the. parallel provision for civil eases, La. C.E. art. 508, this court in Bank One, N.A. v. Payton, 07-0139, pp. 9-10 (La.App. 4 Cir. 9/26/07), 968 So.2d 202, 208, held that the failure to raise this procedural objection until the date of trial resulted in the waiver of the objection. In the Bank One case, we reasoned that “it was reasonable for the trial court to have concluded Mr. Payton waived the procedural protections of C.E. art. 508 by waiting until the day of trial to raise the issue.” Id. We further reasoned “[t]hat finding, however, does not end Lathe inquiry, as C.E. art. 508(B) specifically provides that the waiver of those procedural protections ‘does not constitute a'waiver of any privilege.’ ” Id. Likewise, our finding that Ms. Gaubert waived the procedural protections of C.E. art. 507 does not end our inquiry here; Article 507 contains' the same language as Article 508 — “[ffcilure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.” La. C.E. art. 507 B.
As to the waiver of the privilege,[16] the State points out that even if there were privileged communications between Ms. Gaubert and Ms., Collins as to charges brought dn this case, Ms. Gaubert waived her privilege when she filed a police report with Officer Moran on April 5, 2013 at the Station.- The. trial judge, .however, expressly noted on the record that he found *994 there was no waiver of the privilege. The trial judge then instructed the parties that he would consider the issue of the privilege on a question-by-question basis.[17] Ms. Gaubert’s attorney’s -understanding' of this instruction is demonstrated by the fact that her attorney lodged an objection during Ms. Collins’ testimony, which the judge sustained. Ms. Gaubert’s attorney failed: to object to the remainder of the individual questions posed to Ms. Collins; as a result, any other objection based on attorney-client privilege was waived.[18]
Regardless, a review of Ms. Collins’ testimony belies Ms. Gaubert’s contention that Ms. Collins was allowed, to testify regarding confidential communications stemming from her representation of Ms. Gaubert. Ms. Collins was not questioned about, nor did she reveal, any confidential communications. The State’s line of questioning Ms. Collins concerned whether Mr. Farrell, or his attorney (Mr. Richardson), or anyone else ever told, or conveyed to her, that for a sum of money paid by Mr. Farrell the video and charges against Ms, Gaubert would go away. Thus, Ms. Gau-bert’s attorney-client privilege was not impacted by Ms. Collins’ testimony. This assignment of error is without merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. As we routinely do, we have reviewed the record on appeal for error,s patent and found one. After denying Ms, Gaubert’s motions for new trial and for post-verdict judgment of acquittal, the district court failed to observe , the twenty-four hour delay period before sentencing her. La. C.Cr.P. art. 873 (providing ' that "sentence" shall not be imposed until at least twenty-four hours after tíre motion is overruled,”). The failure of a trial court to wait at least twenty-four hours before sentencing a defendant after denying, the defendant’s motion for post-verdict judgment of acquittal constitutes an error patent on the face of the record, State v. Green, 10-0791, pp. 19-20 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 586. The failure to observe the twenty-four-hour delay period, however, is harmless error when the defendant does not raise any . complaint regarding the defendant's sentence on appeal. State v. Duncan, 11-0563, p. 8 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 511. Such is the case here, Ms. Gaubert does not raise any complaint regarding her sentence on appeal. Thus, the district court's failure to observe the twenty-four-hour delay period is harmless error, which requires no.action by "this court.

. Although Ms. Gaubert reported both extortion and video voyeurism claims to the police, she failed to address the video voyeurism claim in her brief. We thus limit our, analysis to the extortion claim. See Uniform Rules, Court of Appeal, Rule 2-12.4 (providing that ”[a]U specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed/’). We refer to Ms. Gaubert’s complaint as the "extortion report.”

. The record reflects- that Ms. Gaubert's friend who flagged the taxi cab down for her was Brigid Collins. Ms, Collins also was Ms. Gaubert’s attorney in the municipal court case.

. According to the arrest warrant Officer Moran prepared and signed, the facts and circumstances that supported the issuance of a warrant for Mr, Farrell's arrest for video voyeurism and extortion were as follows:
The wanted subject used his cellphone to record video, of the victim with her skirt lifted and video of her underwear and exposed genitalia. The victim never gave Mr. Farrell permission to record her. The victim stated that her attorney, Ms. Brigid Collins ..., received a copy of the video via e-mail at which time Mr, Farrell indicated that if he received $1,000.00, the video and the charges he filed against the victim would go away.

. The proper term for such a motion in a judge trial is a "motion for acquittal” or a "motion for judgment of acquittal.” See La. C.Cr.P. art. 778. There is no "motion for directed verdict of acquittal” even in jury cases, although there is a motion for post-verdict judgment of acquittal. See La. C.Cr. P. art. 821.

. Ms. Gaubert's evidence introduced at trial included the 911 tape, maps of her Lakeview neighborhood, and a dvd containing the videotape Mr. Farrell recorded with his cell phone in the cab. Neither the 911 tape nor the dvd was included in the record on appeal.

. La. Const. art. V, § 5(D)(2) vests the Louisiana Supreme Court with jurisdiction over criminal cases in which "the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.” La. Const, art, V, § 5(D)(2).

.La. R.S. 14:66,provides as follows:
A. Extortion is the communication, of threats to another with the intention thereby to obtain 'anything of value or any acquittance, advantage,, or immunity of any description. Any one of the following kinds of threats shall be sufficient to constitute extortion: ,
(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him,
(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime'.
(3) A threat to expose or impute any deformity or disgrace to the individual threatened or to any member of his family or to any other person held dear to him,
(4) A threat to expose any secret affecting the individual threatened or any member of his family or any other person held dear to him.
(5) A threat to cause harm as retribution for participation in any legislative hearing or proceeding, administrative proceeding, or in any other legal action.
(6)A threat to do any other harm.

. In State v. Robertson, 364 So.2d 915 (La.1978), the defendant accused her boyfriend of kidnapping." The defendant, however, merely wrote notes' to her boyfriend and left them for him to find. The defendant did not report or complain to law enforcement. The defendant only notified law enforcement of. the alleged crime when attempting to cover up her lie while under interrogation, Reversing her conviction for criminal mischief, the Louisiana Supreme Court .reasoned that ‘‘[t]he notes, hardly a report or ‘complaint,’ were . not sent or given [t]o.the.sheriff or intended for him.”

. In State v. Barrilleaux, 555 So.2d 988 (La. App, 5th Cir.1989), the-defendant’s conviction was reversed because the defendant falsely reported a chemical spill, which is not a crime;

. Regarding this misunderstanding,' the prosecutor asked Ms. Gaubert," on cross-examination, to explain what she told Officer Moran; she replied as follows:
I told Officer Moran ... the events that transpired, what happened on Vicksburg [her home address] and at the second location [the address where the video was made] and why I thought it was video voyeurism, and then I told him that I saw the video at Brigid’s and-, he asked, "well, how did she get it, how did she receive it,” and I said I don’t know.
I saw it on the computer. I guess she got it via e-mail because, in my mind when I see something on the computer, it’s because that’s how it was transferred.

. The letter that Ms. Gaubert references was not admitted into evidence. A copy of the one-sentence letter is in the record. The letter, which is dated August 22, 2012, is from Mr. Farrell’s counsel in’ the civil matter (Timothy Richardson) to Ms. Gaubert’s counsel, Frank DeSalvo. Ms. Collins explained that, at that time, she was working as an independent contractor in Mr. DeSalvo’s law office. The letter contains no monetary demand.

. As noted elsewhere, the record reflects that Mr. Farrell’s civil lawsuit against Ms. Gaubert was filed on March 1, 2013.

. Ms, Gaubert concedes in her brief that a civil litigation settlement demand does not constitute extortion.

. According to the State, when the State filed its motion for contradictory hearing, the defense was present, and the judge advised the State that a hearing on the motion was unnecessary.

. La C.E. art. 502 A provides that a person upon whom the law conifers a privilege against: disclosure waives the privilege if she or her predecessor while holder of the privilege voluntarily discloses or consents to disclosure of ¿my significant part of the privileged matter.

. See Wesp v. Everson, 33 P.3d 191, 197, n. 10 (Colo.2001) (the appropriate way to assert the privilege is on a question-by-question basis and not by a general assertion of the privilege).

. See La. C.E, art. 103 A(1) (providing that -error may not be predicated on the admission of evidence unless "a timely objection ... appears of record, stating the specific ground of objection”); La. C.Cr.P. art. 841 A (providing that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”); see also State v. Sanders, 12-0409, p. 12, n. 13 (La.App. 4 Cir. 11/14/12), 104 So.3d 619, 629 (citing State v. Belgard, 410 So.2d 720, 723 (La.1982) (issues and objections not raised at trial will not be considered on appeal unless an error is alleged that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence); and State v. Ruiz, 06-1755, p. 8 (La.4/11/07), 955 So.2d 81, 87 (to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must-state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection)).