968 So.2d 202 (2007)
BANK ONE, N.A. f/k/a The First National Bank of Chicago, as Trustee
v.
Linda Bourgeois PAYTON and Garfield Payton, Jr.
No. 2007-CA-0139.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 2007.
*203 Charles H. Heck Jr., Dean Morris, L.L.P., Monroe, LA, for Plaintiff/Appellee.
*204 Patrick D. Breeden, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
MICHAEL E. KIRBY, Judge.
This appeal is a reprise of a prior appeal (2005-CA-0744) in this case in which a different panel of this court remanded the matter to the district court for consideration of an exception of res judicata. Bank One filed the exception in this court after the lodging of that appeal based upon an alleged compromise pursuant to which the Bank would postpone an impending foreclosure sale in exchange for dismissal of the earlier appeal. The previous panel permitted the Bank to supplement the record with a letter of April 6, 2005 allegedly confirming the compromise and other writings pertaining to the purported agreement of April 6, 2005. In a per curiam on rehearing the earlier panel noted that there was confusion surrounding the alleged compromise because the letter of April 6, 2005 was written by an attorney other than counsel of record in the appellate case.
Following remand, on July 12, 2006 the Bank moved the court to set the exception of res judicata for hearing. The hearing was ultimately held on September 20, 2006. Prior to the hearing date, at defendant Payton's request, counsel for the Bank was served with a subpoena to appear and testify at the hearing. By motion filed on September 14, 2006 counsel for the Bank sought to quash the subpoena on the bases that 1) a contradictory hearing must he held before a subpoena can issue upon an attorney to testify about information obtained in the course of his representation; and 2) the information sought from counsel was readily available from other sources, namely the defendant Payton and the attorney who wrote the letter of April 6, 2005, both of whom were scheduled to testify at the hearing.
At the beginning of the hearing the court heard argument on the motion to quash and granted it finding there was no reason to take an attorney's testimony in the matter before it. After the hearing of September 20, 2006 the court ruled from the bench and directed counsel for the Bank to prepare a written Judgment for its signature. In oral reasons the court found "it very clear to [her] that this matter was compromised in an ethical way" and thus was res judicata. She stated that she found the testimony of Mr. Person, the attorney who authored the letter of April 6, 2005, to be very believable and the testimony of defendant Payton to be very evasive and incredible. She specifically found that Mr. Payton said things that were "clearly not true." A written Judgment was signed October 10, 2006 whereby the court granted the Bank's Motion to Dismiss Appeal/Exception of Res Judicata and dismissed Payton's Reconventional Demand, and any other claims or actions against Bank One at his cost. By order dated November 6, 2006 Payton was granted a devolutive appeal from the referenced Judgment "on the issue of res judicata to include, but not limited to, the court's ruling on the issue of attorney client privilege, motion to quash, etc. etc. [sic]".
THE TESTIMONY
The first witness at the hearing was called by the Bank and was the defendant, Mr. Garfield Payton, Jr., whose attorney immediately objected to testimony on the basis that "all we are here for are written documents." The objection was overruled and made continuing. Mr. Payton testified that he was a party to the foreclosure proceeding; that he had retained attorney Patrick Breeden to represent him; that *205 Mr. Breeden had filed an injunction proceeding and a claim for damages against the Bank which had been denied on January 5, 2005; and, that Mr. Breeden had filed an appeal with this court. Mr. Payton stated he was aware that a foreclosure sale of the property was scheduled for April 7, 2005. When asked if he had consulted attorney Eric Person on March 29, 2005 and signed a retainer agreement with Mr. Person, Mr. Payton denied the assertion. On a follow up question Mr. Payton admitted he signed a representation agreement with Mr. Person at one time but Mr. Person informed Payton that he was not representing Payton. When shown Exhibit one Mr. Payton identified his signature and that of his wife and read the title of the document to be "Representation Agreement," but he stated he did not recall having seen the document before. Ultimately he acknowledged signing the contract with Mr. Person, but denied it had anything to do with the purpose of the hearing.
Testifying further Mr. Payton admitted that the day before the scheduled foreclosure sale he was in Mr. Person's office; that he wanted Mr. Person's help and that "in a joking manner" he indicated to Mr. Person that he had fired Mr. Breeden. While Mr. Payton was in Mr. Person's office, Mr. Person telephoned someone and it seemed to Payton that the Bank's attorney and Mr. Person "had some business, and there was some joking and things like that." Although Mr. Payton denied knowing with whom Mr. Person was speaking he did know that some agreement was reached to postpone the foreclosure sale and that the sale was in fact postponed. The witness denied seeing the letter of April 6, 2005 to the Bank's attorney in which Mr. Person related that his clients had informed him that Mr. Breeden was no longer their attorney and that they would authorize Mr. Person to do whatever necessary to abandon the then pending (earlier) appeal.
Upon examination by Mr. Breeden, Mr. Payton stated that initially he got to Mr. Person's office through the auspices of a potential buyer of the house that was being foreclosed upon.
Next, the Bank called attorney Eric Person whereupon Mr. Payton's attorney objected to Mr. Person testifying relative to the conversation he had with Mr. Payton. The objection was overruled and Mr. Person stated that he first met Mr. Payton when a potential buyer of the property at issue brought Mr. Payton to his law office. The sale fell through, but subsequently Mr. Payton called Mr. Person's office for an appointment on his own behalf. Mr. Person identified the Representation Agreement signed by Mr. and Mrs. Payton in his office on March 29, 2005. Mr. Person stated that once the agreement was signed he considered himself Mr. and Mrs. Payton's attorney.
Mr. Person testified that he called the Bank's attorney's office the day before the scheduled foreclosure sale and that Mr. Payton was in his office during the telephone call. He related that during the conversation, with Mr. Payton present, he informed counsel for the Bank that Mr. Payton had retained him and that Mr. Payton had fired Mr. Breeden. Mr. Person testified that Mr. Payton informed him that the reason he discharged Mr. Breeden was that his attorney fees were more than it would have taken to reinstate the loan. He went on to state that Mr. Payton made the same statement to Bank counsel over the speaker telephone during the conversation.
Mr. Person testified unequivocally that he, on Mr. Payton's behalf, requested that the sale be postponed and in response counsel for the Bank requested that the *206 pending appeal of the damages claim be dismissed as a condition thereof. Mr. Person was specifically asked if Mr. Payton agreed to the condition for postponing the sale and he responded that Mr. Payton agreed to it both while the telephone call was in progress and later in a separate conversation with Mr. Person. In response to Bank counsel's request Mr. Person sent him a letter confirming their agreement. Mr. Person identified the letter of April 6, 2005 as that letter of confirmation. Continuing, Mr. Person testified that the sale scheduled for the next day was in fact cancelled and that was what the Bank was required to do under the agreement. As a result of complaints from the Bank's counsel, the witness was aware that the appeal had not been dismissed. Mr. Person spoke with Mr. Payton many times to see why the appeal had not been dismissed. Most of the time Mr. Payton said Mr. Breeden was just hard-headed and he (Payton) did not know why the dismissal had not been effected. However, the last time Mr. Person and Mr. Payton spoke, Mr. Payton told him that Mr. Breeden had convinced him to go forward with the appeal.
On cross-examination Mr. Person acknowledged that he did not represent the Paytons in any matter other than the one involving the foreclosure.
Mr. Payton resumed the witness stand in his case in chief. Upon being asked by his attorney why he and his wife signed the contract with Mr. Person, Mr. Payton responded that the reason was related to "Fairbanks Capital, which is now Select Portfolio. They was servicing our loan on the house that we lived in. . . ." When asked when he terminated the attorney-client relationship with Mr. Person, Mr. Payton replied that since no funds were exchanged, he considered it terminated "Way before this other time that came up in April."
ASSIGNMENT OF ERRORS
Appellant's brief does not contain a separate specification of errors. Instead, he provides a list of nineteen "Issues To Be Reviewed." We will consider the claims in the order in which they are addressed in the "Argument" portion of appellant's brief.
Attorney Client Privilege
First, Mr. Payton asserts the court below exceeded its authority when it heard testimony from attorney Person because, he contends, the purpose of the remand was to supplement the record with the letter of April 6, 2005 and any other communications concerning that letter. We disagree. The prior opinion of this court clearly states: "Bank One also filed a motion and order for stay in order to supplement the record for expedited consideration. This court partially granted the motion, solely on the issue of supplementing the record, by ordering that the record be supplemented with a letter, dated April 6, 2005, which allegedly confirmed the compromise, and `other written communication relating to an agreement of April 6, 2005.'" It is therefore abundantly clear that the record in the case of Bank One, N.A., f/k/a the First National Bank of Chicago as Trustee v. Bourgeois and Payton; 05-0744 (La. App 4 Cir. 5/24/06) at **2, 935 So.2d 710 at 712 was already supplemented by an order of his court prior to remand. In fact the previous panel that considered this matter reviewed the letter at issue: "The supplemented record contains a letter from Mr. Payton's attorney confirming this phone conversation. The letter confirms that Bank One agreed to delay the foreclosure and states that Mr. Payton will `take whatever steps are necessary to abandon the appeal.'" Id. at **3, 935 So.2d at 712. Indeed, it is *207 at this point in the opinion of the previous panel that a footnote was inserted on rehearing to the effect that the confusion surrounding the alleged compromise is what prompted the remand "for examination of the alleged compromise." It is impossible to comprehend how the trial court below could have complied with the mandate of the remand order without hearing from the author of the letter allegedly effecting the compromise.
We find no merit to the claim that the trial court exceeded its authority by taking testimony from attorney Person.
Next, appellant complains that his oral motion to quash the subpoena to Mr. Person was denied although it was premised upon the same statute and principles as was the subpoena to the Bank's counsel which was in fact quashed on the day of the hearing. The statute at issue is La. C.E. art. 508:
Art. 508. Subpoena of lawyer or his representative in civil cases
A. General rule. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any civil or juvenile proceeding, including pretrial discovery, or in an administrative investigation or hearing, where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.
(2) The purpose of seeking the information is not to harass the attorney or his client.
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.
B. Waiver. Failure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.
C. Binding effect of determination; notice to client. The determination that a lawyer-client privilege is not applicable to the testimony shall not bind the client or former client unless the client or former client was given notice of the time, place, and substance of the hearing and had an opportunity fully to participate in that hearing.
D. Scope. Nothing in this Article is intended to affect the provisions of Code of Civil Procedure Articles 863 and 1452(B).
The trial judge merely stated "I'm not quashing it" but did not give reasons for refusing to quash the subpoena to Mr. Person. However, it did inquire of Mr. Payton's attorney if he had filed "a Motion to Quash in writing" and whether he represented Mr. Person. Counsel for Mr. Payton acknowledged that he did not file the written Motion to Quash but never directly responded to the question concerning his representation of Mr. Person although the obvious answer was that he did not. We conclude from a fair reading of the record that the Judge believed Mr. Payton had waived its rights by not filing the Motion to Quash and that only Mr. *208 Person or his counsel could invoke the provision of C.E. art. 508.
We do not believe that a Motion to Quash was essential nor indeed the only procedural device by which to perfect Mr. Payton's objection to Mr. Person's testimony. The clear wording of the statute, C.E. art. 508(B), requires only a timely objection to non-compliance with the article. It does not mandate a pretrial Motion to Quash. Since the article does call for a contradictory hearing before the issuance of the subpoena, though, we conclude that it was reasonable for the trial court to have concluded Mr. Payton waived the procedural protections of C.E. art. 508 by waiting until the day of trial to raise the issue. That finding, however, does not end the inquiry, as C.E. art. 508(B) specifically provides that the waiver of those procedural protections "does not constitute a waiver of any privilege."
The lawyer client privilege may be claimed by the client, the client's agent or legal representative. La. C.E. art. 506(D). For this reason we do not believe Mr. Person was the only individual who could assert the provisions of La. C.E. art. 508. Mr. Payton through his then current counsel had legal standing to, and was fully competent to, raise the issue on his own behalf. We do note that counsel for Mr. Payton lodged an objection to Mr. Person's testimony insofar as the testimony might relate to conversations between Mr. Payton and Mr. Person. Thus we turn to an examination of whether the conversations between Mr. Payton and Mr. Person that led up to the writing of the letter of April 6, 2005 are protected from disclosure by the lawyer client privilege.
Under La. C.E. art. 506(B), Mr. Payton has a privilege to prevent disclosure of a confidential communication made for the purpose of facilitating the rendition of professional legal services to him. Insofar as here relevant a confidential communication "is one not intended to be disclosed to anyone except those to whom it is made in furtherance of obtaining or rendering legal services for the client." La. C.E. art. 506(A)(5). There is no privilege as to a communication which is relevant to an issue of breach of duty by a lawyer to the client or by the client to his lawyer. La. C.E. art. 506(C)(3). Applying these principles to the facts of this case we conclude that there was no privilege in favor of Mr. Payton to prevent Mr. Person from disclosing the things they talked about on April 6, 2005.
Mr. Payton testified that he was in Mr. Person's office the day before the scheduled foreclosure sale; that he wanted Mr. Person's help; that he ("jokingly") told Mr. Person he had fired Mr. Breeden; and that some agreement was reached to postpone the foreclosure sale. Mr. Payton's communications to Mr. Person through which the Bank was induced to cancel the foreclosure sale could never have been intended to be confidential: of necessity they had to be communicated to the Bank's attorney to achieve the desired settlement.
In any event, though, we find that the provision of La. C.E. art. 506(C)(3) negates any claim of privilege that Mr. Payton might have. It is abundantly clear from Mr. Payton's Opposition to Bank One's Exception of Res Judicata filed in the trial court that he asserts Mr. Person undertook to represent him without authority. In our view, this is quite similar, if not identical, to the situations where a client claims his attorney exceeded the authority granted to the lawyer by the client to settle a case. We find that an allegation of unauthorized representation of a putative client by a lawyer asserts a breach of duty by that lawyer against the putative client. By making that claim against Mr. *209 Person below, Mr. Payton removed the claim of privileged communication insofar as his discussions with Mr. Person were concerned. La. C.E. art. 506(C)(3). We have not found a Louisiana case directly on point, but note that it has been addressed by at least one commentator:
At times the actions of counsel are raised in a collateral fashion. For instance, in defending against an action to enforce a settlement, a party might claim that the attorney exceeded the given settlement authority. Obviously, the privilege on that issue would necessarily be waived.
Edna Selam Epstein, 1 The Attorney Client Privilege and the Work Product Doctrine, p. 556 (American Bar Association 5th ed.2007).
See also, Grant Thornton v. Syracuse Savings Bank, 961 F.2d 1042, 1046 (1992):
An attorney-client privilege may be waived if a party "injects into . . . litigation an issue that requires testimony from its attorney or testimony regarding the reasonableness of its attorney's conduct." [citations omitted.]
In summary, we conclude that although Mr. Payton had standing to raise the issue of the purported breach of lawyer client privilege, the subject matter about wherein Mr. Person testified was not in fact privileged.
Compromise
We next consider Mr. Payton's argument that the requisites for a compromise were not met in this case. From his brief we surmise that he makes this assertion on the premise that a compromise not reduced to writing is not enforceable and that a letter from one party setting forth his understanding of the agreement does not constitute an agreement reduced to writing within the meaning of the applicable statute.
The governing statute is La. C.C. art. 3071 which provides:
A transaction or compromise is an agreement between two or more persons, who for preventing or putting an end to a lawsuit, adjust their differences by mutual agreement, in a manner which they agree on. . . .
This contract must be either reduced to writing or recited in open court. . . .
Mr. Payton's suggestion that the compromise at issue here was not reduced to writing because it was not signed by all parties is patently incorrect. In Felder v. Georgia Pacific Corp., 405 So.2d 521 (La. 1981) the Louisiana Supreme Court made it abundantly clear that the requirement that such an agreement be in writing and signed by both parties "does not necessarily mean that the agreement must be contained in one document." Id. at 523. All that is needed is a written offer signed by the offeror and a written acceptance signed by the offeree, "even if the offer and acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La. C.C. art. 3071 has been perfected." Id. at 523-524.
The facts of Felder, supra, are remarkably similar to those here. There, the plaintiff was a passenger in a vehicle that was struck by defendant's truck. Four months post-accident an adjuster for defendant's insurance carrier met with plaintiff at his home to discuss settling the case. After discussions the adjuster offered plaintiff a sum of money to settle all claims against the defendants. When plaintiff agreed, the adjuster filled out and witnessed a release form which plaintiff signed. No one contemporaneously signed for the defendants. The next day another *210 agent for the insurance company issued a draft to plaintiff and mailed it to him. Plaintiff never presented the draft and subsequently filed suit. In affirming the lower court's granting of the exception of res judiciata, the Supreme Court noted that since the instrument was not co-signed by a representative of the defendants it could not be said the compromise was signed by both parties to it. However, the court concluded the document was an offer to settle which was accepted when the second agent mailed the draft. When read together the two instruments make up a written agreement outlining the obligations of each party and the acquiescence therein by each party.
Here, as in Felder, supra., Mr. Payton made an offer to the Bank to settle the case, which was transmitted to the Bank's attorney and accepted by the Bank when it took the steps to and in fact cancelled the foreclosure sale of the property at issue. Mr. Payton's reliance on Coleman v. Academy of the Sacred Heart, 93-2015 (La. App 4 Cir. 3/29/94), 650 So.2d 265 and Southern Nights, Inc. v. Barnett, XXXX-XXXX (La. App. 4 Cir. 8/18/04), 881 So.2d 1225 is misplaced. In Coleman, supra., the court found that neither the Colemans nor their attorney had signed anything accepting the settlement offer of the defendants. Likewise, in Southern Nights, Inc., supra, the court found that although he plaintiff had submitted letters to defendant offering a specific compromise, the defendant had never signed any document reflecting his consent to the settlement offer.
In the case at bar, however, the contrary is true. Mr. Person as attorney for Mr. Payton communicated to opposing counsel that his clients "will have me take whatever steps are necessary to abandon the appeal" and that counsel for the Bank would delay the foreclosure sale. The record also documents that counsel for the Bank instructed the Civil Sheriff to cancel the sale at issue. The reference on the instructions to the Civil Sheriff is identical to the reference on the communication from Mr. Person to counsel for the Bank. This was as mutual and as bilateral of a settlement as one could imagine.
The crux of Mr. Payton's objection is the fact that Mr. Person concluded the agreement, when he now claims that Mr. Breeden was still his lawyer. However, that issue was resolved against him on a credibility determination by the trial judge. We find the record replete with ample evidence to support the trial court's conclusion that at the time at issue Mr. Payton told Mr. Person he had discharged Mr. Breeden, Mr. Payton engaged Mr. person to represent him and that the settlement and compromise were known to and agreed to by Mr. Payton.
As a part of his effort to defeat the compromise Mr. Payton argues this court must determine the meaning of the documents at issue here and the intent of the parties solely from within the four corners of the instruments themselves and that parol evidence is not admissible to explain or contradict their terms. He then proceeds to parse the documents as follows:
Relying on a sentence in Mr. Person's letter of April 6, 2005 that says, "My client, Linda Bourgeois Payton is through my office taking steps to open the succession of her mother," Mr. Payton asserts that Mr. Person did not represent him, only Linda Payton. He then points out an inconsistency in a sentence in the next paragraph that says "My client s inform me that they are no longer represented by Pat Breeden" (Emphasis added.) The suggestion seems to be that Mr. Person was unsure of whom he represented and that if he did represent Mr. Payton, Mr. *211 Person should have had him sign the letter to signify his consent.
We find no merit to this argument which is clearly fashioned from phrases in the letter snipped out of context. The reference to Linda Bourgeois Payton alone occurs in conjunction with her opening the succession of her mother, for whom Mr. Payton co-signed the note at issue. This work was necessary to cure procedural defects in the foreclosure proceeding as well as to clear the title for a possible subsequent sale of the property. In the very next sentence Mr. Person relates, "They have" authorized him to accept service of the writ, which was necessary to cure the procedural defect in the foreclosure proceeding. This clearly indicates that Mr. Person represents both Mrs. Payton, the heir and Mr. Payton a defendant in the foreclosure proceeding by virtue of his co-signing the note. The remaining references in the letter are to plural clients, thereby including Mr. Payton. The letter when read as a whole, fairly, is not ambiguous or confusing as to whom Mr. Person represents.
Parol Evidence:
Mr. Payton contends it was error for the court below to admit parol evidence in resolving the issue of res judicata. He contends that La. C.C. art. 3071's requirement for a writing is "to avoid swapping a new dispute for an old one" and that by finding Mr. Persons' testimony credible and Mr. Payton's evasive the court below simply swapped a new dispute for an old one.
We do not agree with this assessment. We have already explained why the lawyer client privilege did not attach to the communications at issue here and will not repeat that explanation here. When Mr. Payton contended that Mr. Person was not his attorney and that the settlement could not, therefore, have applied to him he opened the door for the admission of extrinsic evidence to determine the proper scope of the settlement agreement. See, Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741; 748-749:
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or contradict the terms of the instrument. [citations omitted; footnote omitted.] Louisiana courts have, however, crafted a special exception to the extrinsic evidence rule for compromise agreements based upon an in pari materia reading of LSA-C.C. art. 3073's provision that a compromise extends only to those differences the parties clearly comprehended and LSA-C.C. art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind the compromise. [citation omitted; footnote omitted.]
See also, Childs v. Woods, XXXX-XXXX (La.App. 1 Cir. 6/21/02) at *5, 822 So.2d 732 at 735: "When the scope of a release is questioned, other evidence, in the record may be reviewed to determine the intent of the parties." [citations omitted.] See also, Rein v. Luke Edwards, LLC, 2005-754 (La.App. 3 Cir. 2/1/06), 921 So.2d 1158.
Once Mr. Payton questioned Mr. Person's representation of him and Mr. Person's authority to make the agreement to dismiss the appeal in exchange for postponing the foreclosure sale, it became proper for the court to hear extrinsic evidence to determine his intent and the meaning of the letter of April 6, 2005.
For the above reasons the Judgment of the trial court is affirmed.
AFFIRMED.