# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-872

**STATE OF LOUISIANA**

**VERSUS**

**DAMARI JENNINGS**

**\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. CR 143443
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***
**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, Jonathan W. Perry, Judges.

**CONVICTION AFFIRMED; SENTENCE AMENDED AND CASE REMANDED FOR A MINUTE ENTRY REFLECTING THE SENTENCING CHANGE.**

**Andrew R. Lee**
**John R. Guenard**
**Michael J. O'Brien**
**Jones Walker, LLP**
**201 St. Charles Avenue, 51st Floor**
**New Orleans, LA 70170-5100**
**(504) 582-8200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Damari Jennings**

**Damari Jennings**
**Louisiana State Prison**
**628346 Pine – 2**
**Angola, LA 70712**
**IN PROPER PERSON**

**Keith A. Stutes**
**Fifteenth Judicial District Attorney**
**Alan P. Haney**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
  **State of Louisiana**

**PERRY, Judge.**

In this appeal after remand, Defendant, Damari Jennings, asks this court to reverse the trial court's determination that his "best interest" plea to the reduced offenses of aggravated battery and second degree murder[1] was knowingly and voluntarily made. After considering Defendant's arguments, we affirm his aggravated battery conviction, amend his sentence, and order the trial court to make a minute entry reflecting said sentencing change.

## PROCEDURAL HISTORY

On September 19, 2013, Defendant, born on July 14, 1998, was charged at fifteen years of age by two separate grand jury indictments. In the first indictment, Defendant was charged with one count of attempted second degree murder of Tano Gentile, a violation of La.R.S. 14:30.1 and 14:27, the crime having been committed on August 8, 2013. In the second indictment, Defendant was charged with one count of first degree murder of Connie Burch, a violation of La.R.S. 14:30, the crime having been committed on August 18, 2013. Pursuant to La.Ch.Code art. 305(A)(2) and (B)(1)(a), Defendant became subject to the jurisdiction of the adult court for both offenses when the grand jury indictments were returned against him.

On September 2, 2014, Defendant, now sixteen years of age, entered written plea agreements to the amended charges of aggravated battery, a violation of La.R.S. 14:34, and second degree murder, a violation of La.R.S. 14:30.1. On that same date and in conformity with Defendant's written plea agreement, the adult court

---

[1] Defendant has two appeals which bear separate docket numbers in this court. Different appellate counsel appear in each case. Defendant's conviction for aggravated battery will be addressed in this opinion. Defendant's conviction for second degree murder will be addressed in a separate opinion. However, because both "best interest" pleas were entered at the same time, we will combine the discussion of the procedural history.

sentenced Defendant.[2] For aggravated battery, Defendant was sentenced to an agreed upon sentence of ten years at hard labor, with one year served without benefit of parole, probation, or suspension of sentence. For second degree murder, Defendant was sentenced to an agreed upon sentence of life in prison with a stipulation that he would be eligible for parole in accordance with La.R.S. 15:574.4(E).[3] The sentences were ordered to run concurrently.

On February 18, 2016, almost a year and a half after he was sentenced, Defendant filed an application for post-conviction relief seeking an out-of-time appeal. By handwritten notation on the application, the trial court granted the out-of-time appeal for each of Defendant's convictions. Thereafter, on July 19, 2016, the Louisiana Appellate Project notified the district court that it had been assigned to handle the appeal. After various motions were filed and disposed of during the following year and a half, on December 11, 2018, Defendant's counsel submitted a "Motion for Clerk of Court to Process Out of Time Appeal Without Need for a Further Hearing and to Forward Record with the Third Circuit Court of Appeals." On that same date, the trial court granted the motion for each of Defendant's convictions. This court assigned separate docket numbers to each of Defendant's appeals of his two convictions.

---

[2] The adult court retained jurisdiction to accept Defendant's plea to a lesser and included offense. La.Ch.Code art. 305(D).

[3] The written agreement for Defendant's plea to second degree murder contains two handwritten statements. The first states, "Life with parole consideration according to [La.R.S.] 15:574.4(E)." The second provides, "State and Defense stipulate that if a *Miller* Hearing were held, this defendant would be considered elible [sic] for parole according to [La.R.S.] 15:574.4(E)." As reflected in the transcript of Defendant's original sentencing, Judge Everett, *see* n. 4, *infra*, memorialized these plea form notations in his sentencing colloquy. At the time Defendant's offense was committed and at the time of his plea agreement, La.R.S. 15:574.4(E) was the applicable provision. Since that time, La.R.S. 15:574.4 has been amended.

On March 1, 2019, appellate counsel filed a brief in both appellate docket numbers pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), seeking to withdraw from the cases because of the lack of non-frivolous issues for review. In conducting its review of the case, this court noticed potential issues that appellate counsel should have briefed. Therefore, this court issued orders in both appellate docket numbers that appellate counsel brief certain issues. In both appellate docket numbers, this court ordered Defendant to file a brief addressing whether Defendant's pleas should be considered "best interest" pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970) and, if considered "best interest" pleas, whether Defendant's pleas represent a voluntary and intelligent choice considering the strength of the factual basis and the other circumstances of the pleas. Additionally, as regards Defendant's aggravated battery conviction, this court ordered appellate counsel to address the issue of whether La.R.S. 14:34(B) authorized the imposition of one year without benefit of parole, probation, or suspension of sentence under the facts of this case. As regards Defendant's second degree murder conviction, this court ordered appellate counsel to address the concerns raised in Defendant's pro se letter file-date stamped January 9, 2017. In particular, appellate counsel was asked to address Defendant's alleged misunderstanding as to when he would get out of prison and whether that misunderstanding impacted the voluntariness of Defendant's plea to second degree murder.

Appellate counsel filed a motion to consolidate the cases for briefing purposes only, and this court granted the motion. Thus, appellate counsel filed only one brief for both appeals.

On appeal, Defendant alleged that his pleas, purportedly "best interest" or *Alford* pleas, were entered without the trial court first ascertaining that a sufficient factual basis existed to support the pleas and erroneously ordering one year of Defendant's sentence for aggravated battery served without benefit of parole, probation, or suspension of sentence. In a pro se assignment of error, Defendant alleged that he was denied effective assistance of counsel before, during, and after due proceedings were held.

Following a lengthy analysis of Defendant's pleas, this court concluded:

> Based on the foregoing, we remand this case to the trial court with instructions to conduct an evidentiary hearing within thirty days of the date of this opinion to allow the State the opportunity to present a sufficient factual basis for the offenses. The trial court is also instructed to explain to Defendant the life sentence for second degree murder, including that it must be served at hard labor. Thereafter, the trial court is instructed to determine whether Defendant's pleas were entered knowingly, intelligently, and voluntarily based on the circumstances. Then, the trial court is ordered to prepare and lodge an appellate record with this court that contains the transcript of the above-referenced evidentiary hearing within ten days of the hearing. Once the record is lodged with this court, the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issue arising from the hearing. Defendant's additional assignments of error are pretermitted.

*State v. Jennings*, 19-94, p. 22 (La.App. 3 Cir. 11/6/19) (unpublished opinion).

In compliance with this court's prior ruling, the trial court[4] conducted an evidentiary hearing in two parts on November 26, 2019, and December 2, 2019. After hearing testimony from Randall McCann (hereafter "Mr. McCann"), Defendant's trial attorney,[5] the trial court determined Defendant's pleas were

---

[4] For completeness, we note that originally Honorable Glennon Everett, Judge, presided on September 2, 2014, to accept Defendant's "best interest" pleas to the amended charge of aggravated battery and an amended charge of second degree murder. At that time, the trial court sentenced Defendant in accordance with Defendant's written plea agreement. Judge Everett's term of office expired on December 31, 2014. Since May 18, 2016, Honorable David M. Smith, Judge, has presided over this matter.

[5] On remand, Francis Benezech, II (hereafter "Mr. Benezech"), was appointed counsel for Defendant. Mr. Benezech also called Ivory Jennings, Defendant's father, to testify, but he was not present at the hearing. The record shows Defendant's father's attendance was not compulsory

4

knowingly and voluntarily made, without any threats or inducements; the trial court further found that Defendant benefitted from the stipulations[6] of the plea agreement.

Defendant now submits two supplemental assignments of error: (1) Defendant's trial counsel, Mr. McCann, improperly testified at the evidentiary hearings regarding privileged information, and (2) the trial court erred in finding Defendant's guilty pleas were entered voluntarily and intelligently. Additionally, we will also consider the two assignments of error this court pretermitted in Defendant's original appeal from his aggravated battery conviction,[7] namely that the trial court erred in ordering that one year of Defendant's sentence for aggravated battery be served without benefit of parole, probation, or suspension of sentence and that trial counsel was ineffective for failing to adequately investigate the case and for failing to interview possible witnesses.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ATTORNEY-CLIENT PRIVILEGE

Defendant contends his trial counsel, Mr. McCann, improperly testified at the evidentiary hearing regarding communications between him and Defendant that were protected by attorney-client privilege, namely information regarding his

---

because a subpoena for his attendance had not been requested.

[6] *See* n. 3, *supra*.

[7] These assignments of error were made in Defendant's initial appeal to this court. As we stated in our prior unpublished consolidated opinion, "Because we remand this case for an evidentiary hearing, a discussion of this assignment of error is pretermitted and may be addressed when the case returns to this court." *Jennings*, p. 22. Thus, although these assignments of error have not been re-urged, we will address these assignments of error at this time because they were fully briefed in Defendant's earlier appeal.

5

conversations with Defendant regarding the offered plea agreement and his appreciation of Defendant's understanding of said offer. Specifically, Defendant cites La.Code Evid. art. 506(B)(1), which states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:
>
> > (1)     Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

Additionally, Defendant argues the trial court erred in allowing Mr. McCann to testify[8] at the evidentiary hearing without following the procedure outlined in La.Code Evid. art. 507(A):

> Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:
>
> > (1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.
>
> > (2) The purpose of seeking the information is not to harass the attorney or his client.
>
> > (3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

---

[8] In appellate counsel's brief to this court, objection is raised at times about issuing a subpoena to require Mr. McCann's presence; at other times, appellate counsel generally asserts it was improper to have Mr. McCann testify. Although appellate counsel relies on La.Code Evid. art. 507(A) and the requirement for a hearing prior to taking Mr. McCann's testimony, at no time does counsel indicate any record reference that a subpoena or court order was issued requiring Mr. McCann's presence. Nonetheless, we will address this issue to lay it issue to rest.

6

(4) There is no practicable alternative means of obtaining the information.

In our examination of Defendant's argument, we find he overlooks La.Code Evid. art. 507(B), which states, "Failure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege."

In *State v. Gaubert*, 15-774 (La.App. 4 Cir. 12/9/15), 179 So.3d 982, *writ denied*, 16-122 (La. 1/23/17), 215 So.3d 681, the fourth circuit addressed a claim regarding a subpoena issued to defense counsel to testify at trial, where the State filed a motion to subpoena under La.Code Evid. art. 507(A), but no hearing was ever set, and no objection was made until trial. In *Gaubert*, 179 So.3d at 993, that court found:

> Because La. C.E. art. 507 A calls for a contradictory hearing *before* the issuance of the subpoena, we find that Ms. Gaubert waived the procedural protections of this article by waiting until the middle of trial to raise this procedural objection. Construing the parallel provision for civil cases, La. C.E. art. 508, this court in *Bank One, N.A. v. Payton*, 07–0139, pp. 9–10 (La.App. 4 Cir. 9/26/07), 968 So.2d 202, 208, held that the failure to raise this procedural objection until the date of trial resulted in the waiver of the objection. In the *Bank One* case, we reasoned that "it was reasonable for the trial court to have concluded Mr. Payton waived the procedural protections of C.E. art. 508 by waiting until the day of trial to raise the issue." *Id.* We further reasoned "[t]hat finding, however, does not end the inquiry, as C.E. art. 508(B) specifically provides that the waiver of those procedural protections 'does not constitute a waiver of any privilege.'" *Id.* Likewise, our finding that Ms. Gaubert waived the procedural protections of C.E. art. 507 does not end our inquiry here; Article 507 contains the same language as Article 508—"[f]ailure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege." La. C.E. art. 507 B.

As in *Gaubert*, we observe that in the present case Defendant neither filed a motion to quash nor objected before or during trial to Mr. McCann testifying. Indeed, as the State noted in its opposition brief to this court, the only entity to raise

7

any concern with Mr. McCann's testimony was the State. At the conclusion of the first hearing on November 26, 2019, it was noted that Mr. McCann would testify on December 2, 2019.[9] At that time, the State voiced its concern:

> And, Your Honor, the State would object to Mr. McCann coming and giving testimony, because this seems to be somewhat on the direct appeal and I don't think a post-conviction relief petition has been filed to -- I believe at this time the Third Circuit is just probably overreaching and asking the Court to do more than what's allowable by the transcript in the record.

After acknowledging the State's concerns, the trial court stated, "I think what we have to do is have Mr. McCann . . . testify as to his knowledge of what transpired or told to the defendant in order to see if [defendant's plea] was knowing, intelligent, and voluntarily made."

Given Defendant's failure to object in the trial court to Mr. McCann's testimony, we find La.Code Evid. art. 507(B) prohibits him from complaining about the trial court's failure to hold a contradictory hearing before allowing Mr. McCann to testify. However, as noted in *Gaubert*, the waiver in La.Code Evid. art. 507(B) does not constitute a waiver of the actual privilege. Accordingly, we will examine the actual privilege at issue.

Our reading of the record shows that in Defendant's initial application for post-conviction relief in the trial court, seeking an out-of-time appeal, he argued that his guilty pleas were not freely, knowingly, and intelligently made and that he received ineffective assistance of counsel. In particular, he claimed trial counsel failed to investigate the State's evidence, failed to interview witnesses, and convinced him to plead guilty by falsely telling him the State would present

---

[9] The record shows that Mr. Benezech acknowledged that Mr. McCann would be present at the next hearing "to offer some testimony about their conversation." It was at that point the State spoke of its concern about Mr. McCann's proposed testimony.

witnesses whom the jury would believe over Defendant. Additionally, Defendant wrote to the trial judge and accused his trial counsel of telling him he would "get out at the age of 21."

As noted above, the waiver found in La.Code Evid. art. 507(B) does not waive the actual privilege, only the right to complain of the procedural safeguards listed in La.Code Evid. art. 507(A). However, under La.Code Evid. art. 502(A), "[a] person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged."

In *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1141 (La.1987), the supreme court stated:

> A litigant's pleading of a claim or defense to which his attorney-client communications are relevant does not by such pleading alone waive his attorney-client privilege. A pleading must inevitably require the introduction of a privileged communication at trial to constitute a waiver. A party who makes a pretrial partial disclosure of his attorney-client communications waives his privilege as to all such communications on the same subject unless he stipulates that he will not introduce any such communications at trial.

*See also, McNeely v. Bd. of River Port Pilots Com'rs*, 534 So.2d 1255 (La.1988).

Based upon the supreme court's assessment in *Succession of Smith,* we find Defendant's pleadings in this case, accusing trial counsel of ineffective assistance and railroading him into accepting a guilty plea that he did not understand, required testimony from defense counsel regarding his discussions with Defendant and his appreciation of Defendant's understanding of the plea for Defendant to prove his claims. As such, we find Defendant waived any claim of privilege regarding his conversations with Mr. McCann about the plea agreement. As Mr. McCann's

9

testimony reveals, there was no discussion of Defendant's culpability for the crimes, aside from his discussions of his own qualifications and legal experience. Rather, Mr. McCann's testimony was directed toward what he communicated to Defendant regarding the plea agreement and what the understanding between the two was regarding said agreement. Accordingly, we find this assignment of error lacks merit.

## *ALFORD* PLEA ANALYSIS

Defendant next contends the evidence presented at the evidentiary hearings does not support finding Defendant's "best interest" pleas were voluntarily and intelligently made. Additionally, Defendant contends that no juvenile can validly enter a plea pursuant to *Alford* due to the complexity of making a "best interest" plea. In support of his contention, Defendant cites *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010); *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394 (2011); and *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), to argue that because a juvenile's brain, and thus character and personality, are not fully developed, it is not possible for a juvenile to fully grasp the situation facing him as required to plead guilty in his best interest.

In this court's prior ruling, we gave the following analysis of Defendant's guilty pleas:

> As stated previously, the strength of the factual basis given by the State for Defendant's guilty pleas should be evaluated with the other circumstances of Defendant's pleas to determine whether Defendant's pleas represent a voluntary and intelligent choice among the alternatives available to him. [*State v.*] *Fregia*, [12-646 (La.App. 3 Cir. 12/5/12),] 105 So.3d 999. The factual basis presented by the State established only that an eyewitness placed Defendant at the two shootings and that the guns used in the shootings were found in his bedroom. It is not clear, however, if Defendant was the actual shooter, if the second degree murder was committed with specific intent to kill or to inflict great bodily harm, or if the aggravated battery was committed with the intentional use of force or violence on the victim. Thus, the factual basis presented by the State was not substantial. When

10

the factual basis is coupled with the other circumstances of Defendant's pleas—Defendant's young age, the trial judge's scant questioning of Defendant as to his competency, the minimal benefit Defendant received from his pleas, and Defendant's assertion that he believed he would be released at age twenty-one—we conclude that there is merit to Defendant's assertion that the record does not support a finding that his pleas were a voluntary and intelligent choice among the alternatives available to him.

*Jennings*, p. 18.

In *State v. J.S.,* 10-1233, p. 2 (La.App. 3 Cir. 5/11/11), 63 So.3d 1185, 1187-88, this court explained the function and parameter of the "best interest" plea as follows:

> The "best interest" or *Alford* plea, which derives from the United States Supreme Court case of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), is one in which the defendant pled guilty while maintaining his innocence. In *Alford,* the Supreme Court ruled that a defendant may plead guilty, without forgoing his protestations of innocence, if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to defendant[,] ... especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id.,* 400 U.S. at 31, 91 S.Ct. at 164; *State v. McCoil,* 2005-658 (La.App. 5th Cir.02/27/06), 924 So.2d 1120. In a case involving an *Alford* plea, the record must contain "strong evidence of actual guilt." *Id.,* 400 U.S. at 38, 91 S.Ct. at 167; *State v. McCoil, supra;*

> *State v. Stevenson,* 45,371, pp. 4-5 (La.App. 2 Cir. 6/23/10), 41 So.3d 1273, 1277.

> Furthermore, when a defendant claims innocence and still makes an *Alford* plea, the trial court is put on notice that a substantial basis of guilt must be placed into the record. *State v. Villarreal,* 99-827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 129, *writ denied,* 00-1175 (La.3/16/01), 786 So.2d 745.

> [T]he standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses, but rather whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea "represents a voluntary and intelligent choice among the alternative [s]." *Id.* 400 U.S. at 31, 91 S.Ct. at 164.

11

*State v. Orman,* 97-2089, pp. 1-2 (La.1/9/98), 704 So.2d 245, 245.

In accordance with our instruction in Defendant's first appeal to allow the State the opportunity to present a sufficient factual basis for Defendant's offenses,[10] on remand the State provided the following factual basis for Defendant's aggravated battery conviction:

> Your Honor, the State would prove that on or about August 8, 2013, the defendant in this matter, Damari Jennings, Docket number 143443, committed aggravated battery.
>
> The State would prove that on or about August 8, 2013, the defendant [sic] in this matter was here in Lafayette Parish where he passed a group of individuals. For no known reason one of the subjects produced a chrome semi-automatic pistol and fired one round at the victim. The suspect fled the location and the victim called 911 for assistance. The victim left the area and was located at the corner of St. Mary and St. Landry Street. The subject was found to have a gunshot wound to the left side of his face and his shirt was covered in blood.
>
> When questioned, the victim, which was Tannel Gentaly, [sic] advised that the subject, a black male with a short Afro produced a small semi-automatic handgun and put it up to his face. The male shot him in the jaw and the group fled the location. The victim upon getting medical treatment, the doctor advised that there was a small caliber projectile lodged in the left side of his jaw. The jaw had several minor fractures as a result of the gunshot and they transferred him to repair his jaw.
>
> Upon getting a search warrant of where Damari Jennings, the defendant, was residing they found a 25 caliber semi-automatic handgun. The weapon matched the one described by Mr. Wiltz.[11] It also matched the round that was found in the victim during the medical treatment.
>
> Upon doing a lineup for Damari Jennings, the victim came into the lineup and identified Damari Jennings as the shooter.

---

[10] We will detail the State's factual basis for Defendant's second degree murder conviction in a separate opinion.

[11] A police report identifies Mr. Wiltz as being Ricky Allen Wiltz. According to the report, Mr. Wiltz, who was walking with Defendant when Mr. Gentile was shot, was an eyewitness to the shooting and described the .25 caliber handgun to the police.

Regarding the factual basis for the aggravated battery at issue in this appeal,[12] we note that the evidentiary hearing established that Tanell Gentile, the victim, was shot in the face for no known reason with a small caliber handgun, the victim identified Defendant as the shooter during a lineup, and the weapon with which the victim was shot was recovered in Defendant's bedroom. Unlike the factual basis first presented to this court, this factual recitation is substantial and allays our earlier concerns.

We now turn to our instruction to the trial court to more fully explore whether Defendant's "best interest" plea was knowingly, voluntarily, and intelligently made. On remand, the trial court first reviewed the transcript of the original plea[13] and found it showed Defendant's plea was made voluntarily and intelligently. Notwithstanding, the trial court decided to also hear the testimony of Mr. McCann, Defendant's trial counsel.

Mr. McCann stated that "based upon the conversations that I had with [Defendant] and the language that he used with Judge Everett when the plea was done, he certainly seemed to understand what was happening or we wouldn't have done it." Mr. McCann further testified that he "never had a suggestion in [his] own mind that [Defendant] was not mentally competent to understand what was happening and what he was necessarily doing and why he was doing it."

---

[12] We will discuss in a separate opinion Defendant's appreciation of whether he knew the life sentence for second degree murder was adult life, not juvenile life.

[13] When Judge Everett *Boykinized* Defendant, the following facts were exacted from Defendant: (1) he was sixteen years of age; (2) he had obtained his GED; (3) he could read, write, and understand the English language; (4) he was not under the influence of drugs or alcohol, and he did not suffer from a mental defect or disability which would prevent him from understanding the proceedings; and (5) he read, understood, and signed the plea agreement. Defendant stated he understood the charges against him, his right to be tried before a jury or choose to be tried by a judge alone, and the sentence he might receive. After so testifying, the trial court affirmed that Defendant did not wish to contest the facts and wanted to plead to the charges against him. Defendant contests none of these *Boykinization* elements in this appeal.

Addressing our concern that there may not have been any benefit when Defendant accepted a plea to the reduced charge of aggravated battery, Mr. McCann, referencing *Miller*, a 2012 decision, disagreed. He detailed that although this plea may not have provided a benefit at the time, he recommended it to Defendant because it could have benefitted him later when parole would become available. Because Defendant was originally charged with murder and attempted murder, both involved the use of guns, and having committed these crimes within weeks of each other, Mr. McCann opined that Defendant may have been painted as one of the worst offenders and denied parole for that reason. Thus, Mr. McCann asserted the acceptance of this reduced charge benefitted Defendant.

We find the circumstances surrounding Defendant's plea now indicate his plea was knowingly, voluntarily, and intelligently made. The record reflects a substantial basis for Defendant's acceptance of the reduced aggravated battery charge in question.

Finally, regarding Defendant's claim that a juvenile can never enter a valid *Alford* plea because juveniles are incapable of truly understanding the circumstances before them sufficiently to make such an important decision, our extensive research has found no jurisprudential support for Defendant's argument. To the contrary, in *State v. Johnston*, 16-1460, p. 1 (La. 6/5/17), 221 So.3d 46, a case relied upon by this court in its prior ruling, the supreme court remanded the case for an evidentiary hearing to determine "whether the juvenile defendant's guilty plea to the reduced charge of attempted aggravated rape was entered knowingly and voluntarily." The supreme court's *Johnston* decision to remand for the determination of the validity of a juvenile defendant's *Alford* plea, rather than declaring it automatically invalid,

14

clearly shows the Louisiana supreme court believes a juvenile can validly enter an *Alford* plea. As such, we find this assignment of error lacks merit.

## DEFENDANT'S SENTENCING COMPLAINT

In Defendant's counseled brief to this court in his prior appeal, Defendant contended the trial court erred when it ordered the first year of his ten-year sentence for aggravated battery be served without benefit of parole, probation, or suspension of sentence. As this court noted in its prior ruling in this matter, the State conceded Defendant was correct on this issue; however, we pretermitted discussion of the issue. Because there is no evidence on remand that the trial court adjusted Defendant's sentence to delete the restriction of benefits, we will address the issue now.

The penalty range for aggravated battery is set forth in La.R.S. 14:34(B):

> Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both. At least one year of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence if the offender knew or should have known that the victim is an active member of the United States Armed Forces or is a disabled veteran and the aggravated battery was committed because of that status.

There is no evidence in the present case that the victim was active military or a veteran, much less that the aggravated battery was committed because of this status. Although neither party makes any claim that a correction of the sentence will impact Defendant's plea agreement, we find that Defendant's agreement to one-year without benefits as part of his plea agreement to aggravated battery was improper. Because the agreement resulted in Defendant pleading to an illegally excessive sentence, we find the agreement did not induce Defendant to accept a plea agreement that he would have otherwise refused. *See State v. Alexander*, 95-1099 (La.App. 3

15

Cir. 12/26/96), 687 So.2d 527 (holding that the illegally excessive sentence did not induce the defendant to accept a plea agreement that he would have otherwise refused, and the State's failure to fulfill its promise of excessive imprisonment is not a material breach of the agreement). Thus, we find it appropriate to correct Defendant's aggravated battery sentence. La.Code Crim.P. art. 882; *see also State v. R.A.L.*, 10-1475 (La.App. 3 Cir. 6/29/11), 69 So.3d 704. Accordingly, we amend Defendant's sentence for aggravated battery to delete the improper restriction of benefits during the first year of said sentence, and the trial court is hereby instructed to make an entry in the minutes reflecting this change.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In this pro se assignment of error, Defendant claims his trial counsel was ineffective for failing to adequately investigate the charges against him and for failing to interview witnesses. Defendant asserts there is a reasonable probability he would not have pled guilty if his counsel had investigated the State's charges against him. Although Defendant acknowledges that physical evidence connecting him to the shootings was found in his room, Defendant claims there are "rational, if not reasonable, explanations for the presence of weapons used in these crimes to be found in [his] bedroom." "For instance," Defendant asserts, "he had the guns because he did not know they were used in crimes prior to his taking possession of them." As for witnesses his counsel failed to interview, Defendant acknowledges he does not know whether the witnesses would be willing to testify or whether the witnesses remember what occurred. Defendant does, however, provide the name of one witness he claims has expressed a willingness to cooperate.

Addressing just such a claim, in *State v. Johnson*, 18-294, pp. 5-7 (La.App. 5 Cir. 1/16/19), 264 So.3d 593, 598-99 (footnotes omitted), the fifth circuit stated:

16

Defendant contends his trial counsel[] failed to properly investigate and interview essential witnesses, arguing that after his sentencing, alleged eyewitness Selena Collins recanted her statement to the police implicating him and was prepared to testify accordingly at trial. He argues that at all relevant times he advised his attorneys that he was innocent and insisted on going to trial. However, due to ineffective assistance of counsel, he contends that he was forced to plead guilty.

. . . .

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. State v. Francois, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 58, writ denied, 14-431 (La. 09/26/14), 149 So.3d 261. Under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a conviction must be reversed if the defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Lyons, 15-2197 (La. 9/23/16), 199 So.3d 1140, 1141.

When a defendant claims that counsels' ineffective assistance rendered a guilty plea invalid, the Strickland analysis under the first deficiency prong remains the same, whereas under the second prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. State v. Ferrera, 16-243 (La. App. 5 Cir. 12/14/16), 208 So.3d 1060, 1066-67. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. at 1067. If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings. Id.

In this case, the record is insufficient to fully consider defendant's claim that ineffective assistance of counsel rendered his guilty pleas unknowing and involuntary. The only transcript contained in the record is that of the plea hearing. Thus, based on the limited record, we find defendant's allegations of ineffective assistance of counsel cannot be reviewed here, and should be raised in an application

for post-conviction relief in the trial court, where a full evidentiary hearing can be conducted, if warranted under the post-conviction relief statutory procedure, and defendant can present evidence to support his allegations.  See State v. Stiller, 16-659 (La. App. 5 Cir. 7/26/17), 225 So.3d 1154; [State v.] Kron, [07-1024 (La.App. 5 Cir. 3/25/08), 983 So.2d 117, writ denied, 08-813 (La. 10/24/08), 992 So.2d 1039].

We likewise find the record now before us insufficient to review Defendant's claim of ineffective assistance of counsel.  Thus, we conclude Defendant's claim of ineffective assistance of counsel is relegated to post-conviction relief, where a full evidentiary hearing may be held.

## DECREE

Defendant's conviction for aggravated battery is affirmed.  His sentence, however, is amended to delete the improper restriction of benefits during the first year of his sentence, and the trial court is ordered to make a minute entry reflecting said change.  Additionally, Defendant's claim that trial counsel was ineffective for failing to investigate the State's case and for failing to interview witnesses is relegated to post-conviction relief, where an evidentiary hearing may be held to determine the validity of Defendant's claims.

**CONVICTION AFFIRMED; SENTENCE AMENDED AND CASE REMANDED FOR A MINUTE ENTRY REFLECTING THE SENTENCING CHANGE.**