J^FITZSIMMONS, J.
Mrs. Lurline Hancock Woods filed a re-conventional demand against Robert C. Alford and a third party demand against AWC, Inc. Mrs. Woods alleged that Mr. Alford, as an officer, director, and shareholder of AWC, Inc., breached his fiduciary duty to deal fairly with Mrs. Woods. Primarily, she asserts that Mr. Alford misrepresented the true value of AWC, Inc. stock that she sold to AWC, Inc.’s employee and pension plans on July 31, 1985. Mrs. Woods also alleged that he misled her as to the tax consequences of the sale. In the third party demand, she alleged that AWC, Inc. was not only vicariously liable, for the damage caused by the misrepresentations, but also directly participated in the misrepresentations.
Defendants in these demands, Mr. Alford and AWC, Inc., filed various objections, including a peremptory exception raising the objection of res judicata. The defendants argued that the stock sale agreement, signed by Mrs. Woods, contained a general release of all claims arising under the agreement. Thus, the release barred litigation of the breach of fiduciary duty claim made in the demands. Conversely, Mrs. Woods primarily argued that the release did not contemplate or govern -the misrepresentations made to her. The trial court agreed with the defendants and sustained the objection of res judicata. The breach of fiduciary duty claims were dismissed. Mrs. Woods appealed.

APPLICABLE LEGAL PRECEPTS

“A transaction or compromise is an agreement’ between two or more persons, who, for. preventing ... a lawsuit, adjust their differences by mutual consent *734 .La. C.C. art. 3071. “Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in general or particular manner _The renunciation ... extends only to what relates to the differences on which the transaction arises.” La. C.C. art. 3Ó73. .“Transactions have, between the interested parties, a force equal to the authority of things adjudged.” La. C.C. art. 3078. Thus, a valid release bars litigation on compromised issues contemplated by the parties in the release. Hoover v. Livingston Parish School Board, 2000-1293, p. 3 (La.App. 1 Cir. 6/22/01), 797 So.2d 730, 733; Bailey v. Martin Brower Company, 94-1179, p. 3 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299, 1301. The party asserting a release as the basis for its objection of res judicata, bears the burden of proof on the validity and scope of the release. Brown v. Drillers, Inc., 93-1019, p. 6 (La.1/14/94), 630 So.2d 741, 747.

APPLICATION OF LEGAL PRECEPTS TO THE FACTS

At various times during the negotiation for the sale of the stock, Mrs. Woods was represented by legal counsel, including tax attorneys. Additionally, she had access to advice from an accountant, an investment counselor, and family. From the beginning of negotiations in 1983, the parties disagreed about the price of the stock, as well as other terms and conditions of a possible sale. In April of 1985, a dispute arose over reimbursement by Mrs. Woods of some expenses incurred by AWC, Inc. during the sale negotiations. In that same month, Mrs. Woods sent a letter agreement to Mr. Alford for review. In the letter agreement, she included a provision for indemnification against any penalties imposed by the IRS as a result of the sale. The letter agreement also included the essentials of the release language. Just prior to the sale, the principal terms and conditions of the final sale document were given to Mrs. Woods, and her legal counsel, for review. Language covering the release and tax consequences was included. In the final “Stock Purchase and Sale Agreement,” signed by the parties on July 31, 1985, Mrs. Woods agreed to various terms and conditions contained in the document in specific numbered paragraphs in exchange “for good and valuable consideration ....” Paragraph two gave the price of the stock and paragraph four governed tax liabilities. In paragraph number five of the sale agreement, Mrs. Woods acknowledged that she had “no claims existing against the [employee stock and pension] Plans, the Company [AWC, Inc.,] or any of its officers, directors, or trustees, and she ... hereby release[d] any and all such claims, except with respect to the payments due under the terms of the aforesaid Promissory Note.” In her deposition, Mrs. Woods acknowledged that she did not pay any tax penalties or the expenses allegedly incurred by AWC, Inc.
14Was the release valid?
Mrs. Woods claims that the release language is unclear and that the release was not a valid compromise.[2] We disagree.
In the sale agreement, Mrs. Woods agreed to certain specifically numbered terms and conditions in exchange “for *735 good and valuable consideration .... ” In paragraph five, she acknowledged that she did not have any known, “existing” claims against the company, AWC, Inc., or any of its officers or directors, which included Mr. Alford. Additionally, she released “any and all such claims .... ” Thus, although Mrs. Woods was unaware of any “existing” claims at the time she signed the agreement, she released “any and all such claims,” that is, claims “existing” at the time of the sale. Based on the words of the release agreement, using the general rules of interpretation of contracts, the release was not dependent on whether the claims were known or unknown to Mrs. Woods, but only on their existence at the time of the negotiation and sale. See La. C.C. arts.2045, et seq.; Brown, 93-1019 at p. 7, 630 So.2d at 748. We do agree that future claims were - not contemplated by the parties. However, the cause of action asserted by Mrs. Woods arose from operative facts “existing” at the time of the negotiation and sale, not from future acts. See Lamana v. LeBlanc, 526 So.2d 1107, 1109 (La.1988) (Cause of action is the “material fact” that serves as “the basis for the thing demanded.”).
As to the need for consideration or settlement of issues for á valid compromise, the sale settled the parties’ disagreements over the very issues raised by Mrs. Woods: the stock valuation process and differences, responsibility for tax liabilities, and other differences on the terms and conditions of the sale that were disposed of during the negotiation and review process. The sale also specifically stated that the release was given “for good and valuable consideration .... ” See Bailey, 94-1179 at p. 3, 658 So.2d at 1301 (A release may be a compromise and constitute the basis for a plea of res judicata if given in exchange for consideration, such as a settlement of disputed _[¿matters between the parties). Thus, the trial court had a reasonable basis for finding that (1) the release was a valid compromise given in the hope of preventing future litigation; (2) Mrs. Woods released any and all claims “existing” at the time of the sale; and (3) the acts complained of were claims that existed at the time of the sale.
What claims were comprehended by the parties?
Regardless of the general validity of the release, Mrs. Woods claims that breaches of fiduciary duty were not contemplated by the parties as part of the release. Thus, the alleged breaches are not subject to the release. Again, we disagree.
The inquiry on the scope of the release is not whether breach of fiduciary duty as a legal concept was contemplated by the parties at the time of signing the release, but whether the specific breaches, the acts alleged, were intended to be within the scope of the release. When the scope of a release is questioned, other evidence in the record may be reviewed to determine the intent of the parties. Brown, 93-1019 at p. 9, 630 So.2d at 749.
In this case, the petitions in the reeon-ventional and third party demands list the alleged breaches of fiduciary duty as acts of misrepresentations on the correct valuation of the stock, the ultimate stock price agreed upon, and the effect of possible tax liabilities. Other documents in the record show that the valuation and agreed upon price, including possible tax consequences, were integral parts of the negotiated sale terms and conditions. Legally, consent and price are always requisites of sale. La. C.C. arts. 2439 & 2464. The sale agreement itself, admittedly signed by Mrs. Woods, coupled with the other evidence, provided a more than reasonable basis for the trial court’s rejection of the claim that the alleged breaches of duty *736 were not comprehended by the parties in the release.
For these reasons, we cannot say that the defendants in the demands failed to meet their burden of proof, or that the trial court erred in its decision. Therefore, we affirm the judgment. The costs of the appeal are assessed to plaintiff in the reconventional and third party demands, Mrs. Woods.
AFFIRMED.

. Based on allegations of fraud, Mrs. Woods also asserts exceptional circumstances under La. R.S. 13:4232 A(l). She demands equity and asks that the defendants not be allowed the benefit of the release as ■ a bar to her litigation. The record, however, provides only conclusory allegations of fraudulent misrepresentations that are insufficient as a basis for any arguable claim under La. R.S. 13:4232 A(l).