Corrected Copy

| | | |
|---|---|---|
| **1955 NOLA HOLDINGS, L.L.C.** | * | **NO. 2023-CA-0050** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **WINDY HILL PICTURES L.L.C.** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-06205, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Paula A. Brown, Judge Karen K. Herman)

McClain R. Schonekas
William P. Gibbens
SCHONEKAS EVANS McGOEY & McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112

     COUNSEL FOR PLAINTIFF/APPELLANT

Andrew R. Lee
JONES WALKER LLP
201 St. Charles Avenue
51st Floor
New Orleans, Louisiana 70170

     COUNSEL FOR PRENTISS PATRICK/APPELLEE

Leo David Congeni
CONGENI LAW FIRM, LLC
650 Poydras Street, Suite 2750
New Orleans, Louisiana 70130

     COUNSEL FOR WINDY HILL PICTURES, LLC/APPELLEE

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**
**OCTOBER 2, 2023**

Plaintiff, 1955 Nola Holdings, LLC ("Nola Holdings"), appeals the June 14, 2022 Judgment granting a partial exception of no cause of action dismissing, with prejudice, Nola Holdings' breach of fiduciary duties claim (Count V) against defendant, Prentiss "Buddy" Patrick ("Mr. Patrick") and dismissing, with prejudice, Nola Holdings' claim for violation of the Louisiana Securities Law, La. R.S. 51:701, *et seq*. (Count VII) against both Mr. Patrick and Windy Hill Pictures, LLC ("Windy Hill") (collectively "defendants"). The June 14, 2022 Judgment also denied defendants' Exception of *Res Judicata*, without prejudice, and ordered the parties to conduct certain limited discovery.

Nola Holdings also appeals the November 16, 2022 Judgment granting defendants' re-urged Exception of *Res Judicata* dismissing, with prejudice, Nola Holdings' claims against both defendants for negligent representation (Count III), intentional misrepresentation and/or fraud (Count IV), violation of the Louisiana Uniform Trade Practices Act, La. R.S. 51:1404*, et seq*. ("LUTPA") (Count VI), and detrimental reliance (Count VIII).[1] The November 16, 2022 Judgment also

---

[1] Nola Holdings' claims for writ of sequestration (Count I) and breach of contract (Count II) remain against Windy Hill.

1

denied Nola Holdings' request for leave to amend its petition. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In June 2020, Mr. Patrick, acting on behalf of Windy Hill (a single member LLC), reached out to Nola Holdings' managing partner, Kevin Clifford ("Mr. Clifford"), seeking a "bridge loan"[2] to finance the production of a movie, "The Alchemist." Windy Hill operates within the film industry securing third-party bridge loans for movie production until permanent financing is obtained. Nola Holdings invests in various business opportunities.

Beginning in June 2020, Nola Holdings made a series of loans[3] to Windy Hill for production of The Alchemist, with the final advance of $3,050,000.00 on January 13, 2021. On January 15, 2021, Mr. Clifford requested that Windy Hill's attorney, Allen E. Frederic, III ("Mr. Frederic"), update the parties' loan agreement to reflect that latest payment.

On January 15, 2021, Mr. Clifford and Mr. Patrick (on behalf of their respective companies) executed the Amended and Restated Loan and Security Agreement ("Agreement"), drafted by Mr. Frederic. The Agreement provides for Windy Hill's total indebtedness of $5,050,000.00 plus a 20% financing fee due on or before April 5, 2021. Pertinent to this litigation, the Agreement also contains the following provision ("Release"):

> **13. RELEASE.** In consideration of the agreements of Borrower and Lender contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, (a) Borrower hereby releases and forever discharges Lender and its respective directors, officers, employees, agents, attorneys, affiliates, subsidiaries, successors and permitted assigns

---

[2] A bridge loan is a short-term/high interest loan.
[3] The series of loans is also referred to in the record as "tranches."

from any and all liabilities, obligations, actions, contracts, claims, causes of action, damages, demands, costs and expenses whatsoever (collectively "Claims"), of every kind and nature, however evidenced or created, whether known or unknown, arising prior to or on the date of this Agreement including, but not limited to, any Claims involving the extension of credit under or administration of this Agreement, or the indebtedness incurred by Borrower or any other transactions evidenced by this Agreement, in each case arising prior to or on the date of this Agreement, and (b) Lender hereby releases and forever discharges Borrower and its respective directors, officers, employees, agents, attorneys, affiliates, subsidiaries, successors and permitted assigns from any and all Claims, of every kind and nature, however evidenced or created, whether known or unknown, arising prior to or on the date of this Agreement including, but not limited to, any Claims involving the extension of credit under or administration of this Agreement, or the indebtedness incurred by Borrower or any other transactions evidenced by this Agreement, in each case arising prior to or on the date of this Agreement.

Windy Hill defaulted on the loan as of April 5, 2021. On July 21, 2021, Nola Holdings filed a Petition for Damages and for Writ of Sequestration against Windy Hill.

On January 25, 2022, Nola Holdings filed a First Supplemental and Amended Verified Petition for Damages, asserting claims against Mr. Patrick for negligent misrepresentation, intentional misrepresentation and/or fraud, and breach of fiduciary duties. The amended petition also asserted claims against both defendants for detrimental reliance and for violations of LUTPA and the Louisiana Securities Law. As explained in more detail below, Nola Holdings maintains that Mr. Patrick induced Mr. Clifford and Nola Holdings to invest in The Alchemist by falsely representing the financial stability of the project.

On March 18, 2022, Mr. Patrick filed an Exception of *Res Judicata*, seeking dismissal of the six claims raised against him in the amended petition, *i.e.*, negligent misrepresentation, intentional misrepresentation and/or fraud, breach of fiduciary duties, detrimental reliance, and violations of LUTPA and the Louisiana

Securities Law. The sole basis for the Exception of *Res Judicata* is the Agreement's Release clause, as set forth above.

On March 21, 2022, Mr. Patrick also filed a partial Exception of No Cause of Action seeking to dismiss five of the six claims raised against him in the amended petition, *i.e.*, negligent misrepresentation, breach of fiduciary duties, detrimental reliance, LUTPA violations, and Louisiana Securities Law violations.

On April 22, 2022, Windy Hill filed Exceptions of *Res Judicata* and No Cause of Action, adopting the assertions made by Mr. Patrick in his exceptions, with respect to the claims made against Windy Hill for detrimental reliance, LUPTA violations, and Louisiana Securities Law violations.

The exceptions were brought for hearing on June 3, 2022. Judgment was rendered June 14, 2022, denying the Exception of *Res Judicata* but further ordering the parties to conduct certain discovery limited to the issues presented in the Exception of *Res Judicata.* Specifically, the parties were instructed to take the depositions of Mr. Clifford, Mr. Patrick and Mr. Frederic, following which, the trial court would entertain any re-urged exceptions.

The June 14, 2022 Judgment further provided that the Exception of No Cause of Action was granted in part and denied in part. Specifically, the Exception was sustained as to the breach of fiduciary duties claim against Mr. Patrick and the claims against both defendants pursuant to the Louisiana Securities Law. In all other respects, the Exception of No Cause of Action was denied.

Subsequent to the June 14, 2022 Judgment, the parties issued written discovery requests and conducted the depositions of Mr. Clifford, Mr. Patrick, and Mr. Frederic. Thereafter, the defendants re-urged the Exception of *Res Judicata.* That matter was brought before the trial court on November 4, 2022. Judgment

4

was rendered November 16, 2022, granting the Exception of *Res Judicata* as to both defendants and further ordering that "the Petition, as amended, Counts III [negligent misrepresentation], IV [intentional misrepresentation and/or fraud], VI [LUTPA], and VIII [detrimental reliance] are found to be res judicata and are hereby DISMISSED WITH PREJUDICE as to all Defendants."

The November 16, 2022 Judgment further denied Nola Holdings' request for leave to amend its petition. Nola Holdings sought leave to amend in order to state a cause of action for any of Mr. Patrick's fraudulent acts that occurred after the Agreement was executed on January 15, 2021("post-Agreement fraud").

Nola Holdings' timely appeal of the June 14, 2022 and the November 16, 2022 judgments followed.

## LAW AND ANALYSIS

Nola Holdings asserts the following assignments of error:

1. The district court erred in signing an overbroad judgment prepared by defense counsel which ostensibly dismissed post-Agreement fraud claims, which defendant originally conceded were "live" and conceded were not subject to dismissal on *res judicata* grounds, but then indicated in re-urging *res judicata* that such post-release fraud claims were not sufficiently alleged;

2. The district court erred in holding that *res judicata* applies to bar fraud claims arising from post-Agreement misrepresentations in contravention of Louisiana Civil Code article 2004 and in dismissing with prejudice Nola Holdings' post-Agreement fraud and related claims that could not be and were not released, and the district court compounded this error by denying Nola Holdings' leave to amend;

3. The district court erred in holding that *res judicata* precludes Nola Holdings from asserting fraud and related claims, erred in holding that the unusual and ambiguous release provision was valid, and erred in holding that the parties intended to release fraud;

4. The district court erred in holding that no exception to *res judicata* is applicable, where two exceptions are implicated; and

5. The district court procedurally erred in sustaining, in part, defendants' partial Exception of No Cause of Action.

### *Exception of Res Judicata*

The defendants asserted in their Exception of *Res Judicata* that all of Nola Holdings' tort-related claims were precluded by the Release, specifically because the parties agreed to release all claims "of every kind and nature, however evidenced or created, whether known or unknown, arising prior to or on the date of this Agreement." The trial court agreed, and granted the exception.

As this Court has previously noted, "[t]he doctrine of res judicata precludes re-litigation of claims and issues arising out of the same factual circumstances when there is a valid final judgment. It is designed to promote judicial efficiency and final resolution of disputes." *Igbokwe v. Moser*, 2012-1366, p. 4 (La. App. 4 Cir. 4/24/13), 116 So.3d 727, 730 (citations omitted).

"[W]hile ordinarily premised on a final judgment, the doctrine of *res judicata* also applies where there is a compromise or settlement of a disputed claim or matter that has been entered into between the parties." *Lewis v. Wieber*, 2021-0476, p. 13 (La. App. 4 Cir. 7/6/22), 344 So.3d 168, 176 (quoting *Joseph v. Huntington Ingalls Inc.*, 2018-02061, p. 3 (La. 1/29/20), 347 So.3d 579, 584).

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. "A release executed in exchange for consideration is a compromise." *Deaville v. Exxon Mobil Corp.*, 2021-0240, p. 8 (La. App. 4 Cir. 5/3/21), 319 So.3d 381, 386 (quoting *Carrie v. La. Farm Bureau Cas. Ins. Co.*, 2004-1001, p. 3 (La. App. 4 Cir. 2/16/05), 900 So.2d 841, 843).

"The party asserting a release as the basis for its objection of *res judicata*, bears the burden of proof on the validity and scope of the release." *Childs v. Woods*, 2001-1444, p. 3 (La. App. 1 Cir. 6/21/02), 822 So.2d 732, 734 (citing *Brown v. Drillers, Inc.*, 93-1019, p. 6 (La. 1/14/94), 630 So.2d 741, 747).

The appellate standard of review of exceptions of *res judicata* has been set forth as follows:

> The standard of review of a peremptory exception of res judicata requires an appellate court to determine if the trial court's decision is legally correct or incorrect. *BBCL Entrs., LLC v. American Alt. Ins. Corp.*, 15-0469, p. 3 (La. App 4 Cir. 2/3/16) 187 So.3d 65, 67 (quoting *Myers v. Nat'l Union Fire Inc. So. of Louisiana*, 09-1517, p. 5 (La. App. 4 Cir. 5/19/10), 43 So.3d 207, 210). Factual issues are reviewed on a manifest error/clearly wrong basis. *BBCL Entrs., LLC*, 187 So.3d at 67 (citing *Countrywide Home Loans Serv., LP v. Thomas,* 12-1304, p. 3 (La. App. 4 Cir. 3/20/13), 113 So.3d 355, 357).

*In re Precept Credit Opportunities Fund, L.P.*, 2022-0067, p. 3 (La. App. 4 Cir. 9/16/22), 348 So.3d 844, 846.

In this appeal, Nola Holdings argues that the trial court erred in granting the Exception of *Res Judicata* based on the Release because: 1) the Agreement was vitiated by fraud;[4] 2) the Release was unusual and ambiguous; and 3) the parties did not intend to release fraud.[5]

Regarding fraud, this Court has stated:

> "Fraud" is defined as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. In *Yi-Zarn Wang v. Boudreaux*, this Court noted "[t]he two essential elements of fraud are the intent to defraud or gain an unfair advantage

---

[4] La. C.C. art. 3082 provides, in pertinent part, that "[a] compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts."

[5] La. C.C. art. 3076 provides that "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."

and actual or probable damage." 2020-0249, p. 12 (La. App. 4 Cir. 1/15/20), 310 So.3d 730, 738 (quoting *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4 Cir. 1992)).

The essential elements of "intentional misrepresentation" are "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, Inc.*, 2006-0974, p. 3 (La. App. 4 Cir. 6/20/07), 962 So.2d 1089, 1091 (quoting *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D. La.1995)).

*McGaha v. Franklin Homes, Inc.*, 2021-0244, pp. 37-38 (La. App. 4 Cir. 2/4/22), 335 So.3d 842, 865, *writ denied*, 2022-00374 (La. 4/26/22), 336 So.3d 897.

Nola Holdings alleged in its amended petition that beginning in June 2020, Mr. Patrick falsely represented that Sony was fully financing The Alchemist, from which Nola Holdings would be repaid. It further alleged that Mr. Patrick falsely represented, among other things, that various investors had committed tens of millions of dollars to the project, that numerous Oscar winners had committed to working on the project, that financial models predicted a minimum $300 million profit for the production, and that Nola Holdings would be paid back quickly when, in fact, the project did not have adequate funding.

Mr. Clifford testified in his deposition that the representation of Sony's financial involvement was critical to his decision to invest in the project. He further stated that he was never told that Sony backed out of the deal. However, after further questioning, Mr. Clifford conceded that in December 2020, prior to the January 13, 2021 advance of more than $3,000,000.00, and prior to signing the January 15, 2021 Agreement, Mr. Patrick informed him, via two separate emails, that Sony had opted out. Mr. Clifford identified the relevant emails but stated he did not recall seeing them.

8

It is clear from the record that prior to executing the Agreement, Mr. Clifford was told that Sony would not be financing the film. Thus, there is no evidence that Mr. Clifford was fraudulently induced by the Sony representation.

The record also reflects that from June 2020, through January 15, 2021, Mr. Patrick sent Mr. Clifford numerous and very detailed emails containing updates on the progress of the production, including potential deals from various investors, the interest shown from certain celebrities and directors, and the potential return on their investment. While the emails reflect that Mr. Patrick remained highly optimistic in the film's progress and in its potential financial outcome, Nola Holdings has not demonstrated that Mr. Patrick fraudulently induced Mr. Clifford to enter into the Agreement.

A claim of fraud "cannot be predicated on unfulfilled promises or statements as to future events. Fraud may be predicated on promises made with the intention not to perform at the time the promise is made." *Sun Drilling Prods. Corp. v. Rayborn*, 2000-1884, p. 15 (La. App. 4 Cir. 10/03/01), 798 So.2d 1141, 1152 (citing *Dutton and Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4 Cir. 3/26/92).

Here, the alleged misrepresentations are promissory in nature and are predominately subject to actions to be performed by third parties. That Mr. Patrick may have misjudged his ability to successfully get the film produced is not actionable fraud. It is evident from the record that Mr. Patrick also had a financial stake in the success of the film. In sum, on the record before us, we find Nola Holdings' argument that the Agreement was vitiated by fraud to be unpersuasive.

In an effort to determine whether the parties to the Agreement were on an equal playing field, and specifically whether Mr. Clifford was a sophisticated

businessman, the trial court instructed the parties to depose Mr. Clifford, Mr. Patrick and Mr. Frederic.

Mr. Clifford's deposition testimony revealed that he: 1) retired in 2019 as Chairman and CEO of a multi-trillion dollar global investment firm ; 2) formed Nola Holdings in March 2020, from which he made multi-million dollar real estate and private equity investments; 3) was involved in other film projects/bridge loans with Mr. Patrick and/or Windy Hill, where the contracts included virtually identical release clauses; 4) acknowledged that he read the Release multiple times before signing the Agreement; 5) did not consult outside counsel before signing the Agreement; and 6) acknowledged that he sought legal advice from Mr. Frederic regarding some of his other investments.

Mr. Frederic stated in his deposition that he was acting as Windy Hill's attorney when he drafted the Agreement, upon Mr. Clifford's request. He further explained that when representing a borrower in a loan agreement, "I always serve this up." He considered the Release clause to be a fairly standard provision.

Mr. Patrick testified that Mr. Clifford's experience in the film industry was limited. However, Mr. Patrick stated that he did approximately six or seven film-related deals with Mr. Clifford.

At the hearing on the re-urged Exception of *Res Judicata*, the trial court stated that after considering the deposition testimony, he was satisfied as to the "sophistication of the lender." The trial court further stated that "I think [Mr. Clifford] had a bad case of understanding. It's a five million dollar deal on both sides of the equation. He had every opportunity to show everything to anyone and he signed it anyway."

The record before us supports the trial court's factual findings. Mr. Clifford and Mr. Patrick are two commercially sophisticated parties who have some history of doing business together on film projects. Mr. Clifford acknowledged that he read the Release more than once and that he did not seek outside counsel before signing. Moreover, Mr. Clifford conceded in his deposition that the same Release clause was contained in the two prior versions of the Agreement as well as a loan agreement that the parties perfected on another film project.

Regarding Nola Holdings' claim that the Agreement was unusual and ambiguous, we look to the well-established principles of contract interpretation. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050.

For purposes of contract interpretation, "[a] contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Andry v. Omega Hosp., LLC*, 2019-0459, p. 6 (La. App. 4 Cir. 11/6/19), 282 So.3d 1170, 1174 (quoting *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75).

As the Louisiana Supreme Court further explained in *Campbell,* 2001-2578, pp. 8-9, 817 So.2d at 76,

The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent. *Peterson v. Schimek*, 2000-2644 (La. 9/18/00), 767 So.2d 707; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous. *See Slocum-Stevens Ins. Agency, Inc. v. International Risk Consultants, Inc.*, 27,353 (La. App. 2 Cir. 12/11/95), 666 So.2d 352, writ denied, 96-0102 (La. 3/8/96), 669 So.2d 399.

"The interpretation of the language of a contract is a question of law subject to the *de novo* standard of review on appeal, while factual determinations are subject to the manifest error standard of review." *TKTMJ, Inc. v. Sewerage and Water Bd. of New Orleans*, 2020-0154, p. 5 (La. App. 4 Cir. 12/16/20), 366 So.3d 276, 238 (quoting *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 2017-0595, p. 7 (La. App. 4 Cir. 2/14/18), 317 So.3d 351, 357).

At the outset, we note that Nola Holdings stated in its petition, and Mr. Clifford reiterated in his deposition, that the Agreement is valid and binding. Furthermore, a plain reading of the Release reveals no ambiguity. The parties agreed to a mutual release of "all Claims, of every kind and nature, however evidenced or created, whether known or unknown, arising prior to or on the date of this Agreement." The fact that the clause may not typically be found in lending agreements does not render it ambiguous. Finally, considering the clear language of the Release, we find no merit in Nola Holdings' argument that the Release did not apply to fraud claims.

Based on the above, we find that the record supports the trial court's conclusion that the Agreement was valid and binding and that the claims asserted in Nola Holdings' amended petition were precluded by the Release. Accordingly, the Exception of *Res Judicata* was properly granted.

***Leave to Amend***

It is well-established that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court." La. C.C.P. art. 934. "Indeed, it is mandatory that the trial judge permit an amendment of the pleadings when there is a conceivable possibility that a cause of action may yet be stated by a plaintiff." *Musa v. Musa*, 2018-1066, p. 9 (La. App. 4 Cir. 4/3/19), 267 So.3d 1190, 1196 (quoting *Cooper v. Pub. Belt R.R.*, 2000-0378, p. 4 (La. App. 4 Cir. 12/20/00), 776 So.2d 639, 641).

Here, Nola Holdings argues that the trial court erred in denying its motion for leave to amend its petition to state a cause of action for post-Agreement fraud. Nola Holdings first asserts that the granting of the Exception of *Res Judicata* could not and would not have dismissed the post-Agreement fraud claims, considering that the Agreement only released claims "arising prior to or on the date of this Agreement." Second, Nola Holdings points out that Mr. Patrick's counsel specifically represented at trial that, "I am not going to suggest that it [the Release] releases post-release claims, and I will concede that those are live . . . ."

The defendants submit that an amendment would be futile because Mr. Clifford testified that in late March 2021, shortly after he signed the Agreement and before the loan went into default, he came to disbelieve anything Mr. Patrick said, thus destroying the necessary reliance component to any post-Agreement fraud claim. We find no merit in this argument.

Nola Holdings' Amended Petition does allege that Mr. Patrick made certain misrepresentations regarding the financial future of The Alchemist after the January 15, 2021 execution of the Agreement. While those allegations appear to

13

be somewhat generalized, we are not prepared to say that the basis for the objection to the petition cannot be removed by amendment to sufficiently allege post-Agreement fraud claims with more specificity.

Considering the above, we find that pursuant to La. C.C.P art. 934, the trial court erred in denying Nola Holdings' motion for leave to amend its petition. Accordingly, the trial court's ruling denying the amendment is reversed and the matter is remanded to afford Nola Holdings the opportunity to amend its petition.

***Exception of No Cause of Action***

As stated above, the June 14, 2022 Judgment granted the defendants' Exception of No Cause of Action, dismissing Nola Holdings' breach of fiduciary duties claims made against Mr. Patrick and dismissing the Louisiana Securities Law claims made against both defendants. Nola Holdings argues that the trial court erred in sustaining the defendants' partial exception of no cause of action. However, based on our finding that the trial court properly granted the Exception of *Res Judicata*, dismissing all tort-related claims, these two remaining claims would also fall. Thus, this argument is rendered moot.

**CONCLUSION**

For the foregoing reasons, we affirm the trial court's November 16, 2022 Judgment granting the defendants' Exception of *Res Judicata*, but we reverse the trial court's denial of Nola Holdings' motion for leave to amend. The appeal from the June 14, 2022 Judgment, granting the defendants' Exception of No Cause of Action, is rendered moot.

**DECREE**

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

14